Rockingham
No. 84-579

SANDRA FENLON & a.

v.

CHARLES L. THAYER, M.D.

SANDRA FENLON & a.

v.

PAUL DRISCOLL, M.D., AND PORTSMOUTH HOSPITAL

February 27, 1986

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Bruce W. Felmly* and *Carol Ann Conboy* on the briefs, and *Mr. Felmly* orally), for the plaintiffs.

*Sulloway Hollis & Soden*, of Concord (*Arthur W. Mudge* on the brief and orally), for Charles L. Thayer.

*McDonough & O'Shaughnessy P.A.*, of Manchester (*Augustine J. McDonough* and *William P. Tocchi* on the brief, and *Mr. Tocchi* orally), for Paul Driscoll.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Theodore Wadleigh* on the brief and orally), for Portsmouth Hospital.

BATCHELDER, J. The plaintiffs appeal the decision of the Superior Court (*Dunn*, J.) favoring the three defendants in these medical malpractice actions consolidated below. The issues raised on appeal are whether the trial court erred (1) in preventing the plaintiffs from introducing at trial the testimony of an expert originally consulted by one of the defendants, (2) in excluding evidence relating to the record-keeping practices of one of the defendants, or (3) in failing to set aside the verdicts and to grant judgments notwithstanding the verdicts. For the reasons that follow, we reverse and remand the case to the superior court for a new trial.

The pertinent facts of this case follow. From November 20 to December 24, 1980, Sandra Fenlon was treated by Drs. Charles Coyne, Charles L. Thayer, and Paul Driscoll at Portsmouth Hospital for a ruptured appendix and complications resulting from removal of her appendix. During the course of several visits to the hospital, Mrs. Fenlon underwent surgery five times. When her condition further deteriorated, she was transferred to Massachusetts General Hospital for emergency surgery. She received ongoing treatment related to these complications, including an operation on March 23, 1981.

As a result of these events, Sandra and William Fenlon sued Drs. Thayer and Driscoll and Portsmouth Hospital in negligence to recover for medical expenses, lost wages, and damages for physical and emotional disability and scarring. During the course of pre-trial discovery the plaintiffs obtained a copy of a letter from Dr. William D. Moyle, Jr., of Keene, to attorney Robert M. Larsen, of Concord, whose firm represents Dr. Thayer. Attorney Larsen had consulted Dr. Moyle to get a preliminary opinion on the medical malpractice issues, and as a potential expert witness. Dr. Moyle's letter rendered opinions on three aspects of Mrs. Fenlon's medical treatment: the antibiotics, the transrectal drainage, and the small bowel fistula. Since the plaintiffs determined that the opinions expressed by Dr. Moyle were favorable to their case, they listed him as a witness and advised the defendants that Dr. Moyle would be subpoenaed to testify at the trial. Dr. Thayer's counsel, meanwhile, had decided not to call Dr. Moyle as an expert witness.

In September 1984, Dr. Thayer filed a motion *in limine* seeking an order preventing plaintiffs' counsel from eliciting testimony from Dr. Moyle pertaining to the fact that he was initially retained by defense counsel. The court granted the motion, ruling that although such testimony was relevant, it would be excluded on the ground of undue prejudice.

Dr. Moyle received a subpoena requiring him to appear at the trial on October 5, 1984. The plaintiffs moved to compel Dr. Moyle

to testify, and the court conducted a *voir dire* examination of the surgeon. The court found that (1) Dr. Moyle did not want to testify, (2) he had not been an attending physician to Mrs. Fenlon, (3) he had received a subpoena, (4) he had not prepared to testify by reading treatises or reviewing files, and (5) he had based his opinions on a review of Mrs. Fenlon's medical records. The court denied the plaintiffs' motion to compel Dr. Moyle to testify and excused him.

At trial, medical experts offered conflicting views on the care provided to Mrs. Fenlon, and the credibility of the experts was attacked. Dr. Charles Lipson, the plaintiffs' expert, was maligned as a "former surgeon now turned businessman." Moreover, the plaintiffs were chided for failing to provide a New Hampshire surgeon as an expert, and defense counsel intimated that local surgeons were more worthy of belief.

After deliberations, the jury returned verdicts for the defendants. Thereafter, the plaintiffs filed a motion for judgments notwithstanding the verdicts and, in the alternative, a motion to set aside the verdicts and for a new trial. These motions were denied, and the plaintiffs appealed.

## I. *Exclusion of Expert Testimony*

The first question before us is whether the trial court incorrectly prevented the plaintiffs from compelling an expert, initially consulted by one of the defendants and appearing pursuant to a subpoena, to appear as a witness. The plaintiffs argue that the trial court order preventing Dr. Moyle from testifying denied them "their constitutional rights to a fair jury trial." The defendants contend that the trial court properly exercised its discretion in deciding not to compel the witness to testify.

We begin our analysis by affirming the principle that a trial is essentially a search for the truth. N.H. R. Ev. 102. *See Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115, 480 A.2d 43, 44 (1984). One of the ways this principle is manifested in the judicial system is in the right to subpoena witnesses. *See* RSA 516:5. This principle is not unlimited, however. The trial court has broad discretion in ruling on the admissibility of evidence. *See* N.H. R. Ev. 104(a); *Dowling v. Shattuck*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941). Moreover, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of prejudice, confusion, needless presentation of cumulative evidence, or misleading the jury. *See* N.H. R. Ev. 403.

New Hampshire law provides only limited assistance in addressing the propriety of the trial court's exclusion of Dr. Moyle. New

Hampshire Superior Court Rule 35.b.(3)(b), modeled after Federal Rule of Civil Procedure 26(b)(4)(B), states that only in exceptional circumstances may a party "discover facts known or opinions held by an expert, who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." Since this rule refers to discovery and not to testimony at trial, it is not controlling. *See Granger v. Wisner*, 134 Ariz. 377, 381, 656 P.2d 1238, 1241–42 (1982).

The New Hampshire Rules of Evidence provide some guidance in reviewing the trial court's exclusion of the expert's testimony. Rule 103(b) concerns the effect of an erroneous ruling. It states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." N.H. R. Ev. 103(b).

We think the plaintiffs' substantial rights were affected by the exclusion of Dr. Moyle's testimony. At the pre-trial hearing on July 11, 1984, Judge Wyman considered the plaintiffs' motion to compel production of Dr. Moyle's letter. The court ruled that the letter was discoverable and stated, in response to a query whether a subpoena to produce the expert at trial would be permitted, that the plaintiffs could "compel [Dr. Moyle], subject to contempt, to answer [whether he rendered] an opinion, [and] if so, what [the opinion] was." Although the trial court was hypothecating rather than ruling on the right to subpoena an adverse party's expert witness, that response, together with the ruling on the discoverability of the letter, support the plaintiffs' argument that it was unfair and prejudicial for the trial court in mid-trial to exclude the witness.

This unfairness was exacerbated when the plaintiffs were derided at trial for failing to produce a New Hampshire surgeon as an expert, after being prohibited by the court from doing so. Although Judge Wyman's ruling was on discovery, and Judge Dunn's on admissibility, the latter exclusion prejudiced the plaintiffs' presentation of their case and their ability to corroborate the views of Dr. Lipson, another expert. At trial, the defendants could have impugned the value and weight of Dr. Moyle's testimony if it was admitted, but it was error for the trial court to exclude the testimony altogether.

At oral argument, subsidiary issues were raised: *i.e.*, whether the expert was privileged from testifying because of his initial contact with the defendants; whether the expert should be forced to testify against his will; and whether a party could in effect insulate experts from testifying by perfunctorily consulting those experts.

The plaintiffs argued that there is no privilege exempting an opposing party's expert from testifying against his original client and that whether the expert wanted to testify was irrelevant. The defendants countered that (1) there is a privilege protecting experts from testifying under these circumstances, (2) the question was one of the doctor's preparation and ability to render opinions based on a full review of the medical records, as well as his preference not to testify, and (3) the expert's opinions were "inspecific answers" to the questions posed and not final opinions on the negligence issues.

██ The plaintiffs' arguments are more persuasive. The expert's desire not to testify and his lack of preparation are immaterial. Moreover, the weight and credibility of the expert's testimony is a jury question. Accordingly, we hold that the trial court incorrectly prevented the plaintiffs from compelling an expert, who was initially consulted by an adversary, to appear as a witness.

Our holding follows the rule in several other jurisdictions, although it is neither a majority nor a minority rule. *See, e.g., Granger v. Wisner*, 134 Ariz. 377, 656 P.2d 1238 (1982); *see also Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976); *Rancourt v. Waterville Urban Renewal Authority*, 223 A.2d 303 (Me. 1966). *Contra Healy v. Counts*, 100 F.R.D. 493 (D.C. Colo. 1984); *People ex rel. Kraushaar Bros. & Co. v. Thorpe*, 296 N.Y. 223, 72 N.E.2d 165 (1947).

██ Many cases in this area of the law involve expert property appraisers, not doctors. *See, e.g., Thomaston v. Ives*, 156 Conn. 166, 239 A.2d 515 (1968). Nevertheless, we think the rule favoring testimonial compulsion should be applied to all experts, including doctors, appraisers, and others. As the court stated in *Kaufman*, there is no justification for a "rule that would wholly exempt experts from placing before a tribunal factual knowledge relating to the case in hand." *Kaufman, supra* at 821 (computer industry experts with no special connection to the parties in the litigation).

██ The right to compel an expert to testify is not unlimited, but is subject to the traditional limitations excluding prejudicial, misleading, or cumulative evidence. "An important consideration in determining whether one employed as an expert by one party may or should be required to testify as such at the instance of the adverse party is whether, under the particular circumstances, it is fair to do so." Annot., 77 A.L.R.2d 1182, 1192 (1961) (citing *Ramacorti v. Boston Redevelopment Authority*, 341 Mass. 377, 170 N.E.2d 323 (1960)). As a general rule, however, a party may assert the right of testimonial compulsion of experts.

 Some courts have attempted to delineate factors to guide trial courts in determining whether to exclude experts from testifying. *See, e.g., Kaufman,* 539 F.2d at 822. We see no need to specify such grounds; the rules of evidence and the trial court's sound discretion are usually sufficient. In this case the trial court abused its discretion. Since the plaintiffs' rights were substantially affected when the trial court excluded Dr. Moyle from testifying, we reverse the court's denial of the plaintiffs' motion to compel and therefore remand for a new trial.

## II. *Scope of Expert Testimony*

A second related issue, which we will decide in the interest of judicial economy, is whether the plaintiffs should be allowed on remand to elicit testimony from Dr. Moyle with respect to his initial role as a defendant's consultant. In response to a motion *in limine,* the trial court ruled that such evidence would be excluded because it was prejudicial. This order was erroneous because Dr. Moyle's status as a consultant pertains to the weight and credibility of his testimony. Moreover, since the defendants will have the opportunity to counter the weight of such testimony by establishing, among other things, Dr. Moyle's lack of preparation, the testimony will not be unduly prejudicial.

 The trial court has broad discretion in ruling on matters of relevance and prejudice. Nevertheless, this court will reverse an erroneous ruling when it substantially affects the rights of a party. *See State v. Ruelke,* 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). In this case, as in all cases which depend on expert testimony, the credibility of the experts is a paramount issue. Whether an expert is a "hired gun" or one whose opinions have greater foundations of objectivity is an issue to be litigated by counsel and considered by the jury. *See* N.H. R. Ev. 104(e); *Board of Ed. of South Sanpete, etc. v. Barton,* 617 P.2d 347, 349–50 (Utah 1980). The trial court erred in ruling that Dr. Moyle cannot testify as to which party first contacted him in this case.

 Although we rely in part on the holding in *Granger,* 134 Ariz. at 377, 656 P.2d at 1238, concerning the admissibility of the expert's testimony, we differ with the Arizona court on the permissible scope of such testimony. In *Granger,* the court stated: "the restriction that defense counsel could not mention the fact of the previous consultation with plaintiff's counsel . . . was proper . . . because the fact of prior consultation . . . was irrelevant to the issue of negligence." *Granger,* 134 Ariz. at 381, 656 P.2d at 1242 (citations omitted). On the contrary, the fact that a party's adversary first con-

tacted the expert is material to the weight and credibility of that expert's testimony, and we think the jury should have the opportunity to consider this fact. *See Barton supra.*

## III. *Dr. Thayer's Record-keeping Practices*

The next issue before us is whether the trial court erred in preventing reference to Dr. Thayer as a "chronic offender" and "chronic delinquent" with regard to his record-keeping practices at Portsmouth Hospital. The trial court ruled that although reference could be made to Dr. Thayer's past practices, reference to the terms just mentioned would be prejudicial. We see no abuse of discretion in this ruling. *See State v. Champagne,* 125 N.H. 648, 653, 484 A.2d 1161, 1164 (1984).

## IV. *Portsmouth Hospital*

We now address Portsmouth Hospital's contention that even if the expert testimony was improperly excluded, this court should affirm the verdict in favor of the hospital because the substance of Dr. Moyle's potential testimony does not pertain to the hospital's negligence or liability. Defendant cites no authority for this position. Moreover, given the evidentiary errors, we disagree that on remand a jury could not find Portsmouth Hospital negligent. The testimony that might be elicited from an expert at trial could pertain to the issue of whether Dr. Coyne met his duty of care on November 20, 1980; *i.e.,* whether there was a misdiagnosis and whether, assuming no rectal exam was performed, this failure amounted to medical negligence. Although Dr. Moyle's opinions in the May 7, 1984 letter with regard to the antibiotics, the transrectal drainage, and the small bowel fistula do not implicate Portsmouth Hospital, his trial testimony could have addressed other subjects and persuaded the jury to reach a different result.

This court wrote over sixty years ago: "as much . . . of the case must be retried as may be necessary in order to afford the parties a fair trial. . . . Where it appears that the error may have affected all the issues, the conclusion of law that there must be a complete new trial follows." *West v. Railroad,* 81 N.H. 522, 533–34, 129 A. 768, 774 (1925). In this case, the jury on remand must consider the negligence claims against all three defendants.

Finally, we need not consider the plaintiffs' contentions regarding the post-verdict motions. Since the trial court erred in ruling on the admissibility and scope of Dr. Moyle's testimony, the case is remanded to superior court for a new trial.

*Reversed and remanded.*

All concurred.