220 N.J. Super. 330 (1987)
531 A.2d 1379
MALESHA COGDELL, AN INFANT BY HER GUARDIAN AD LITEM, RUTH COGDELL AND RUTH COGDELL, INDIVIDUALLY, PLAINTIFFS,
v.
THOMAS BROWN, M.D. AND DAVID R. SNEAD, M.D., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided June 26, 1987.
*331 John M. Blume for plaintiffs (Blume, Vazquez, Goldfaden, Berkowitz, Oliveras & Donnelly, attorneys; Carol Loughrey, of counsel).
*332 Thomas B. Leyhane for defendant Thomas Brown, M.D. (Dughi & Hewit, attorneys).
Stephen J. Tafaro for defendant David R. Snead, M.D. (McDonough, Murray & Korn, attorneys).
VILLANUEVA, J.S.C.
Plaintiffs brought this malpractice action against an obstetrician and a pediatrician as a result of the birth of a handicapped baby.
Plaintiffs at the trial sought to call as their witness an examining doctor initially consulted by one of the defendants. Defendants objected to his appearance on behalf of plaintiffs, as a breach of loyalty and allegiance.
The primary issue is whether a plaintiff can call as a trial witness an examining doctor who submitted a report on behalf of a defendant.
The court supplements its oral ruling made during the trial that plaintiffs may do so.
The jury found both doctors were not negligent.
On October 16, 1982, Malesha Cogdell was born after a caesarean section was performed by Dr. Thomas Brown, an obstetrician and gynecologist, who called Dr. David Snead, a pediatrician to be present at the delivery. Malesha sustained permanent injuries, allegedly at or shortly after her birth, which have caused her to be physically and mentally handicapped. She has a cerebral palsy of the severest spastic quadriparetic type with microcephaly and mental retardation.
In March 1986, the attorney for defendant, Dr. Brown submitted the report of his examining doctor, Dr. Lawrence Taft to plaintiffs' attorney, who was aware of Dr. Taft because he had used him seven or eight times. Since plaintiffs' attorney had confidence in Dr. Taft and was pleased with the report, he notified both defendants' attorneys in April 1986 that he intended *333 to use Dr. Taft as his witness and would rely on the report already submitted to him.
Just before jury selection the attorney who was recently assigned to represent Dr. Brown made a motion in limine to prevent Dr. Taft from testifying on behalf of plaintiffs on the ground that, since the expert was originally consulted by a defendant, he had an obligation of allegiance to said defendant and it would deter defendants from having examinations made of plaintiffs. The attorney for plaintiffs could have used any number of witnesses with Dr. Taft's qualifications, i.e., a neuro developmental pediatrician, but it was too late during the trial to obtain another expert.
Since defendants knew for more than one year that plaintiffs were going to call Dr. Taft as their expert witness, there was no intent by plaintiffs' attorney to mislead defendants nor could they be surprised. There was also no prejudice other than what takes place when any expert testifies. Therefore, the court permitted Dr. Taft to testify for plaintiffs or they would have been deprived of a fair trial. This accords with the overriding objective of giving a defaulting party his day in court, with due regard, however, to protecting the opposing party from the effects of surprise or other prejudicial factors. Westphal v. Guarino, 163 N.J. Super. 139, 145-146 (App.Div. 1978), aff'd o.b. 78 N.J. 308 (1978).
R. 4:21-6(d) regarding medical malpractice litigation specifically permits a doctor member of the panel to be called at a subsequent trial of the action as a witness by any of the parties. Koch v. Community Memorial Hosp., 187 N.J. Super. 573 (Law Div. 1982).
This rule affirms the principle that a trial is essentially a search for the truth.
The only New Jersey cases dealing with a similar issue all involved a plaintiff's treating physician. A defendant cannot cross-examine plaintiff's treating doctor as to whether defendant doctor was negligent in his treatment of plaintiff. *334 Serrano v. Levitsky, 215 N.J. Super. 454 (Law Div. 1986). A patient cannot prevent defendant doctors and their attorneys in medical malpractice action from speaking privately with patient's current treating physicians about any matter that was not privileged, but a treating physician need not serve voluntarily as an expert for his patient's adversary in litigation. Lazorick v. Brown, 195 N.J. Super. 444 (App.Div. 1984); Doe v. Eli Lilly & Co., Inc., 99 F.R.D. 126 (D.D.C. 1983); Cf. Piller v. Kovarsky, 194 N.J. Super. 392 (Law Div. 1984), where the court applied Evid.R. 4 to bar a treating physician from testifying as a liability expert for the defense in a medical malpractice action.
Our discovery rules state that "only upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means" may a party discover facts or opinions held by an expert (other than an expert who has conducted an examination pursuant to R. 4:19). R. 4:10-2(d)(3). Since this rule refers to discovery and not to testimony at trial, it is not controlling.
Dr. Taft's report covered two aspects of the case: (1) the infant's physical and mental condition; and (2) her projected lifetime care costs. The latter could have been determined by Dr. Taft on behalf of Dr. Brown without disclosing it to plaintiffs if he had not examined the infant and was not expected to be called as a witness for Dr. Brown.
Once Dr. Taft examined the infant on behalf of Dr. Brown, his report was available to plaintiffs whether or not he was expected to testify. See Pressler, Current N.J. Court Rules, Comment 4 R. 4:10-2(d), Comment 2 R. 4:17-1, Comment 3 R. 4:17-4(e) and Comment R. 4:19 (1987)
No party to litigation has anything resembling a proprietary right to any witness's evidence.
Defendants' argument as to allegiance was rejected in Doe v. Eli Lilly Co., Inc., supra, where the district court judge stated:

*335 As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. See International Business Machines Corp. v. Edelstein, 526 F.2d 37, 41-44 (2d Cir.1975); Gregory v. United States, 369 F.2d 185, 187-88 (D.C. Cir. 1966); Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 551 (D.C. 1981); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. ed. 1961). Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved... [99 F.R.D. at 128]
This principle was recognized by our Supreme Court in Stempler v. Speidell, 100 N.J. 368, 381 (1985).
In Fitzpatrick v. Holiday Inns, Inc., 507 F. Supp. 979 (E.D. Pa. 1981), the district court judge held that, although defendant who had plaintiff examined by physician decided not to call physician as witness and was unwilling to agree to plaintiff's introducing a report prepared by physician, plaintiff would be permitted to subpoena physician as the only witness who could lay the necessary foundation for introduction of the report.
The weight of authority holds that "a court does have the power to subpoena an expert witness and, though it cannot require him to conduct any examinations or experiments to prepare himself for trial, it can require him to state whatever opinions he may have previously formed." Kaufman v. Edelstein, 539 F.2d 811, 817 (2 Cir.1976), quoting Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536 (2 Cir.1972).
In a case almost identical to the facts herein, plaintiffs argued that the trial court order preventing a doctor, initially consulted by one of the defendants, from testifying on their behalf denied them "their constitutional rights to a fair jury trial." Fenlon v. Thayer, 127 N.H. 702, 506 A.2d 319 (1986). On appeal, the Supreme Court held that it was unfair and prejudicial for the trial court in mid-trial to exclude the witness. The court held that this unfairness was exacerbated when *336 plaintiffs were derided at trial for failing to produce a New Hampshire surgeon as an expert, after being prohibited by the court from doing so. Id., 506 A.2d at 322. Likewise in this case, all three of plaintiffs' medical experts are out-of-state physicians while the physician in question is a local one, professor and chairman of the University of Medicine and Dentistry of New Jersey, Rutgers Medical School.
Although the cases previously cited went further to permit the expert to be subpoenaed, this case did not have that problem because Dr. Taft voluntarily agreed to testify for plaintiffs.
An additional issue was whether counsel for plaintiffs could ask the witness who first contacted him as an expert witness. The New Hampshire Supreme Court held that such testimony is material to the weight and credibility of that expert's testimony and the jury should have the opportunity to consider this fact, disagreeing with Granger v. Wisner, 134 Ariz. 377, 656 P.2d 1238 (1982).
Generally any party, including the party calling a witness, may examine him and introduce extrinsic evidence relevant upon the issue of credibility. Evid.R. 20. This rule enlarged the ability of parties to introduce evidence affecting the credibility of witnesses in general, and of their own witnesses, in particular. Where the rule formerly spoke in terms of "no evidence" being generally admissible to support the credibility of a witness, the new language merely restricts the admissibility of prior consistent statements for that purpose.
Particularly in medical malpractice cases, the credibility of the experts is a paramount issue. Whether an expert is a "hired gun" or one whose opinions have greater foundations of objectivity is an issue to be litigated by counsel and considered by the jury. Board of Ed. of South Sanpete, etc. v. Barton, 617 P.2d 347, 349-350 (Utah 1980).
*337 The policy of the law is to allow all competent, relevant evidence to be produced, subject only to a limited number of privileges. See Evid.R. 7; Lazorick v. Brown, supra, 195 N.J. Super. at 456.
Since this court believed that the jury should have the opportunity to consider the fact that this expert witness was initially consulted by one of the defendants in judging his credibility, the court permitted this testimony.