222 N.J. Super. 218 (1987)
536 A.2d 332
ROBERT KURDEK, PLAINTIFF,
v.
WEST ORANGE BOARD OF EDUCATION, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided December 10, 1987.
*220 David P. Affinito for plaintiff (Dell'Italia, Affinito & Jerejian, attorneys).
Domenic D. Toto for defendant (Goldstein, Toto, Romano & Avignone, attorneys).
VILLANUEVA, J.S.C.
This is a suit for personal injuries wherein plaintiff alleges that he was caused to fall off his motorcycle when an unidentified driver of defendant-West Orange Board of Education's van suddenly veered into his lane.
At the trial defendant sought to call as its witness plaintiff's treating physician to obtain the medical history given by plaintiff as well as the physician's prognosis of no permanency. Plaintiff objected to this expert testimony because of the allegiance allegedly owed by the physician to his patient and the fact that no expert report of this witness was supplied by defendant.
The issue is whether defendant, without supplying any expert's report, can call as a trial witness plaintiff's treating doctor to testify that plaintiff has no permanent disability.
This opinion supplements the court's ruling that permitted such testimony.
The jury found both plaintiff and defendant were negligent and apportioned the negligence: 30% to plaintiff and 70% to the *221 board of education. The jury's award of total damages of $80,000 was molded, therefore, to $56,000 without interest.
After the accident, plaintiff was confined in the intensive care unit at St. Barnabas Medical Center under the care of Malcolm G. Coblentz, M.D., a general and vascular surgeon, who brought in five consultants.
The only doctor called as a witness by plaintiff was Rowland Goodman, M.D., an examining physician specializing in internal medicine. He stated that plaintiff suffered a posttraumatic laceration of the lung, with permanent effects to the heart and lung, that the injury and damage to the heart muscle was almost identical to a heart attack, that plaintiff had problems lifting his arm and permanent impairment of his lung function. He testified that this impaired function would affect plaintiff for the rest of his life, because he would not be able to exercise as much as before, and that if he had children, he could not physically keep up with them.
When the case was assigned for trial, defendant's attorney told plaintiff's attorney and the court that he would subpoena plaintiff's attending physician, Dr. Coblentz as his last witness to show the history plaintiff gave to the doctor about the accident and his prognosis of no permanency. After plaintiff completed his case, he requested a hearing in limine, Evid.R. 8, regarding Dr. Coblentz' "expert" testimony because of allegiance allegedly owed by the physician to his patient, plaintiff, and the failure to submit a report by Dr. Coblentz, causing surprise to plaintiff's attorney.
At the Rule 8 hearing, the court informed the doctor that he did not have to serve voluntarily as an expert for his patient's adversary in litigation. Lazorick v. Brown, 195 N.J. Super. 444, 457 (App.Div. 1984); Doe v. Eli Lilly & Co., Inc., 99 F.R.D. 126, 128 (D.D.C. 1983). Dr. Coblentz's reply was "I have an obligation for truth. I consider myself to be a highly ethical physician. I will state the facts of my opinion as I see them without influence one way or the other."
*222 When questioned further by plaintiff's attorney whether there was a duty of loyalty to his patient, Dr. Coblentz stated: "To a patient who hasn't paid my bill, to a patient who doesn't come for follow up unless his attorney comes to...."
He said further that a treating physician's function is to make the patient well and that he had told the patient that there had been a full recovery.
The last time Dr. Coblentz saw plaintiff was on November 25, 1985, when plaintiff's lawyer made an appointment for plaintiff. Dr. Coblentz testified that at that time he was of the opinion that the primary injury, which had caused a myocardial contusion, was not permanent and the doctor told plaintiff that he was fine. The last note on Dr. Coblentz' chart was "full recovery, no permanent injuries."
Dr. J. Harold Bennett, an examining orthopaedist for defendant, testified that plaintiff had made a good recovery and sustained no permanent injury, except for residual scarring from the thoracotomy and the lacerations to his knees.
The primary objection of plaintiff's attorney was that Dr. Coblentz should not be permitted to render an expert opinion because he did not submit a report. However, the fallacy with this specious argument is that it was the attorney for plaintiff who sent plaintiff to Dr. Coblentz for a final examination and it was plaintiff's attorney who "failed" to obtain an expert's report. In addition, defendant, in answers to interrogatories requesting the names of persons with relevant knowledge of the facts, responded with the names of several lay witnesses together with all other persons mentioned in answers to interrogatories of plaintiff and defendant.
A judge may exclude the testimony of an expert whose report is not furnished pursuant to Rules 4:17-4(a) and 4:23-5(b). The application of the sanction is consigned to the sound discretion of the judge, subject only to the rule that the sanction visited upon the party must be just and reasonable. The factors which would "strongly urge" the trial judge, in the *223 exercise of his discretion, to suspend the imposition of sanctions are: (1) the absence of a design to mislead, (2) the absence of the element of surprise if the evidence is admitted, and (3) the absence of prejudice which would result from the admission of the evidence. This accords with the overriding objective of giving the defaulting party his day in court, with due regard, however, to protecting the opposing party from the effects of surprise or other prejudicial factors. Westphal v. Guarino, 163 N.J. Super. 139, 145-146 (App.Div. 1978), aff'd o.b. 78 N.J. 308 (1978).
In this case, there was no design to mislead. Plaintiff, and presumably his attorney, cannot validly claim surprise since the evidence sought to be introduced was told to plaintiff when plaintiff's attorney sent him to the doctor, presumably for a final evaluation. Plaintiff and his attorney have always known that the person who is most familiar with plaintiff's condition and prognosis is his attending physician, Dr. Coblentz. Similarly, there can be no claim of prejudice other than the effects of testimony disputing a party's claim. In reality, of course, all evidence offered by a party against another party is prejudicial or it would not be offered.
Since plaintiff's attorney apparently did not receive an oral or written report from plaintiff's treating physician, technically, he may not have been required to furnish defendant a report of the physician. R. 4:17-4(e). Cf. Serrano v. Levitsky, 215 N.J. Super. 454 (Law Div. 1986). But, how can the attorney now complain that, because of his failure to obtain a report, he is surprised that the physician made a prognosis (of no permanency) when he discharged plaintiff?
The purpose of the patient-physician privilege is to enable the patient to secure medical services without fear of betrayal and unwarranted embarrassing and detrimental disclosure in court of information which might deter him from revealing his symptoms to a doctor to the detriment of his health. Piller v. Kovarsky, 194 N.J. Super. 392, 396 (Law Div. 1984).
*224 The physician-patient privilege is a statutory creation in derogation of the common law. In fact, the common law rule of no privilege still applies in England and several states in this country. For a survey discussion, see 8 Wigmore, Evidence § 2380; "The Physician-Patient Privilege," 56 Northwestern L. Rev. 263 (1961).
However, it is questionable whether the expectation of privacy continues once the medical condition is revealed to the world at large in a civil lawsuit. When a plaintiff places a physical or mental condition at issue by way of filing a lawsuit, what further purpose is met by maintaining the privilege? "In the first place, the bringing of an action in which an essential part of the issue is the existence of physical ailment should be a waiver of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist." 8 Wigmore, Evidence § 2389.
The statutory physician-patient privilege, N.J.S.A. 2A:84A-22.1 et seq., is a supplement to the Evidence Act of 1960. However, giving a patient's prognosis is not a confidential communication between the patient and physician. N.J.S.A. 2A:84A-22.2.
Where a physician at the instance of an attorney examined the latter's client not for the purpose of treatment but for the purpose of ascertaining conditions determinative of a fact essential to a cause of action, the physician did not receive a communication in relation of "physician and patient," and hence the examination did not qualify under the definition of privileged communication. McMillen v. Industrial Commission of Ohio, 37 N.E.2d 632, 634 (Ohio Ct. App. 1941).
Even prior to the enactment of the statutory privilege, however, doctors were ethically restrained by the Oath of *225 Hippocrates, 400 B.C., from violating the privacy of their patients by disclosing confidential information in the absence of legal compulsion. Hague v. Williams, 37 N.J. 328, 332 (1962); Lazorick v. Brown, supra, 195 N.J. Super. at 451. This ethical obligation is now embodied in section nine of the Revised principles of medical ethics IV, 1980, published by American Medical Association. Nevertheless, even without testimonial compulsion, information concerning a patient's medical condition can be disclosed to someone having a legitimate interest in the subject "where ... the physical condition of the patient is made an element of a claim." Hague v. Williams, supra, 37 N.J. at 336.
A patient's interest is twofold: (a) the desire to protect from disclosure by the physician confidential information not relevant to the litigation and therefore still protected by the patient-physician privilege and the physician's professional obligation to preserve confidentiality, and (b) the desire to preserve the physician's loyalty to plaintiff in the hope that the physician will not voluntarily provide evidence or testimony that will assist defendant's cause. Stempler v. Speidell, 100 N.J. 368, 381 (1985). However, these interests must be balanced with the search for the truth.
A statutory privilege, such as that between a patient and physician, is to be construed restrictively, since its allowance obstructs the search for the truth. The privilege must be interpreted "in sensible accommodation to the aim of a just result." State, In Interest of M.P.C., 165 N.J. Super. 131, 136 (App.Div. 1979).
The rules of evidence specifically provide that they "shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained." Evid.R. 5.
Although the 1967 Rules of Evidence Commission indicated that Rule 5 is not "a rule of relaxation," it was cited in support of the proposition that the courts have long been discontented "with gamesmanship as a substitute for truth-finding and the *226 doing of justice." Eden v. Conrail, 175 N.J. Super. 263, 282 (App.Div. 1980), mod. on other grds., 87 N.J. 467 (1981).
Truth is the "ultimate quest" of all judicial proceedings. State v. Sheppard, 197 N.J. Super. 411, 433-434 (Law Div. 1984). The fundamental principle is that a trial is essentially a search for the truth. Cogdell v. Brown, 220 N.J. Super. 330 (Law Div. 1987).
In Serrano v. Levitsky, supra, the court held that an unsolicited opinion of the treating physician in a medical malpractice case, that defendant surgeon was not negligent, was protected by the physician-patient relationship, and thus, not admissible against patient.
In Piller v. Kovarsky, supra, the court applied Evid.R. 4 to bar a treating physician from testifying as a liability expert for defendant in a medical malpractice action.
No party has anything resembling any proprietary right to any witness's evidence. Doe v. Eli Lilly & Co., Inc., supra, 99 F.R.D. at 128; Stempler v. Speidell, supra, 100 N.J. at 381.
The policy of the law is to allow all competent, relevant evidence to be produced, subject only to a limited number of privileges. See Evid, R. 7; Lazorick v. Brown, supra, 195 N.J. Super. at 456.
A lawsuit is not a parlor game; it is solemn search for truth conducted by a court of law. When a plaintiff/patient files an action placing his physical or mental condition at issue, this should preclude the litigant from invoking the physician-patient privilege to prevent the court from reaching the truth of the very issue he has raised. In this regard, as described by Justice Traynor in San Francisco v. Superior Court, 37 Cal.2d 227, 232, 231 P.2d 26, 28 (Supreme Ct. 1951), the plaintiff simply "cannot have his cake and eat it too."
Plaintiff's motion to exclude Dr. Coblentz's prognosis is denied.