234 N.J. Super. 375 (1989)
560 A.2d 1272
ANTHONY J. GENOVESE, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1989.
Decided July 14, 1989.
*377 Before Judges GAULKIN, R.S. COHEN and A.M. STEIN.
Benjamin Clarke, Deputy Attorney General argued the cause for appellant (Donald R. Belsole, Acting Attorney General, attorney, James J. Ciancia, Assistant Attorney General, of counsel, Benjamin Clarke, on the brief).
Jeffrey M. Keiser argued the cause for respondent (Ballen, Keiser, Gertel & Feldman, attorneys, Jeffrey M. Keiser, on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Plaintiff was employed by defendant as a train ticket collector. On New Year's Eve, patronage by rowdy celebrants skyrocketed in response to defendant's offer of free rides. Plaintiff, two other operating employees of New Jersey Transit and two Amtrak police officers were in charge of a ten-car train with 1170 seats which left New York City at 1:30 a.m. There were 1300 to 2500 passengers.
The situation was chaotic. At the Elizabeth stop, plaintiff tried to help people exit and was attacked by unruly passengers. He was beaten and choked, but suffered no serious physical injury. The emotional consequences claimed by plaintiff were, however, severe and permanent. He has not returned to any employment. He made an attempt to do so but could not function for a single day.
Plaintiff started this action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., charging that defendant failed to provide him with a safe place to work. The matter was tried to a jury, which found defendant liable and assessed damages of $413,000. Defendant appealed, asserting various errors. We affirm the verdict on liability, but reverse the verdict on damages and remand for a new trial on that aspect.
*378 The only argument made by defendant respecting the liability verdict focuses on the testimony of Amtrak police officer William Hawley. He was on the train with plaintiff, and at trial described the perilous situation in considerable factual detail. In addition, Hawley was permitted to give his opinion that the security provided by him and his partner was not effective or sufficient.
Hawley had been a law enforcement officer for some 18 years. He was qualified by that experience and his own observation of and participation in the hectic events of New Year's Eve to give the opinion asked of him. Essentially the same questions and answers appeared in Hawley's deposition. His opinion was therefore no surprise to defendant. He was not, however, named as an expert in answers to interrogatories.
The descriptions of the situation given to the jury called for the conclusion elicited from Hawley. His opinion was nearly superfluous. The trial court's discretionary call was within the permitted range of sound judgment. See Westphal v. Guarino, 163 N.J. Super. 139 (App.Div.), aff'd 78 N.J. 308 (1978). Even if the decision were wrong there would be no reason to think it capable of producing an unjust result. R. 2:10-2.
A problem arose in the damage phase of the trial which requires partial reversal. Plaintiff produced an expert economist. Over defendant's objection, the trial judge himself elicited testimony from him announcing "bottom line" wage loss figures, which clearly violated the prohibition of such testimony announced in Tenore v. Nu Car Carriers, 67 N.J. 466 (1975). Next day, the judge saw that he had erred and thus told the jury to disregard the bottom line figures. He repeated the admonition in the general instructions at the end of the trial.
Plaintiff argues that Tenore does not apply because the Federal Rules of Evidence govern a New Jersey court trying an FELA case. Not so. In general, rules of evidence are classified as procedural. Busik v. Levine, 63 N.J. 351, 367 app. dism., 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). *379 Tenore's[1] bar to presenting "bottom line" aggregate wage loss figures concerns the manner of presenting evidence, and is thus subject to the rules of the forum. It is not a matter of measuring damages, which in FELA cases is governed by substantive federal law. St. Louis Southwestern Ry. Co. v. Dickerson, 470 U.S. 409, 410, 105 S.Ct. 1347, 1347-1348, 84 L.Ed.2d 303 (1985); Norfolk v. W. Ry. Co. v. Liepelt, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 reh. den. 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250 (1980).
Plaintiff also argues that the Tenore rule was not in fact transgressed by the expert's testimony. The argument proceeds from a narrow reading of Tenore contained in Salas by Salas v. Wang, 846 F.2d 897 (3rd Cir.1988), which we do not share.
Finally, plaintiff argues that the court's curative instructions dissipated the harm. We disagree. The instructions were convoluted and difficult to penetrate. It is hard to say from reading them exactly what the court was asking the jury to do. In our view the instructions were insufficient to overcome the strong psychological impact on the jury of the court-invited testimony of gross numbers. See Tenore, 67 N.J. at 483. We also note that the damage verdict of $413,000 was suspiciously near one of the witness's bottom line figures of $425,000, and suggests an effect on the determination. Cf. Cox v. Valley Fair Corp., 83 N.J. 381, 386 (1980).[2]
Defendant's other complaint will likely arise again at the damages retrial and we will therefore address it. Defendant had plaintiff examined by Dr. Pelicci, a Pennsylvania neuropsychiatrist who practiced near plaintiff's residence. Pursuant to R. 4:14-9, defendant took a videotaped deposition of Dr. Pelicci *380 for use at trial. The testimony was not quite what defendant's counsel expected, and so defendant moved for leave to have plaintiff examined by another psychiatrist. The motion was denied by the assignment judge as too late. At trial, plaintiff sought to introduce Dr. Pelicci's videotaped testimony as part of his case in chief. Over defendant's objection the court permitted it, but disallowed any reference to the fact that it was defendant that originally retained Pelicci. The court apparently adopted plaintiff's thesis that the deposition was de bene esse and therefore the equivalent of trial testimony, which defendant could not withhold from the jury.
A de bene esse deposition is taken provisionally for use if the witness is unavailable at the time of trial. V Wigmore, Evidence, §§ 1414-1415 (Chadbourne Rev. 1974). An R. 4:14-9 videotaped deposition of a treating physician or expert witness is different. It may be used at trial in lieu of testimony whether or not the witness is available to testify. R. 4:14-9(e).
Plaintiff argues that his use of Dr. Pelicci's deposition was authorized by R. 4:16-1(c), which, in general, permits the deposition of a witness to be used by any party for any purpose if the appearance of the witness cannot be obtained because he is dead, infirm, imprisoned or out of state, or, despite the exercise of reasonable diligence, he cannot be subpoenaed. The flaw in plaintiff's argument is that the reason he could not obtain the appearance of Dr. Pelicci to give his expert opinion was not one of those reasons listed in R. 4:16-1(c). It was that the opinion of an expert, as opposed to testimony as to facts perceived, may not ordinarily be compelled against the wishes of the expert. Hull v. Plume, 131 N.J.L. 511, 517 (E. & A. 1944); Stanton v. Rushmore, 112 N.J.L. 115 (E. & A. 1934); Braverman v. Braverman, 21 N.J. Super. 367 (Ch.Div. 1952). See also Spaulding v. Hussain, 229 N.J. Super. 430 (App.Div. 1988). The New Jersey rule is not universally approved. Annot., "Right of Independent Expert to Refuse to Testify as to *381 Expert Opinion," 50 A.L.R. 4th 680 (1986). Other views were expressed in Kaufman v. Edelstein, 539 F.2d 811 (2 Cir.1976).
The noncompellability of live expert testimony does not, however, necessarily apply to a deposition recorded for use at trial. Although Dr. Pelicci's live opinion testimony could not ordinarily be compelled by subpoena, it could be ruled available for trial use by an adverse party once it was rendered and recorded on videotape.[3] The expert's work was done and presumably paid for. The expert had no continuing interest in preventing unfriendly use of his expertise and his conclusions. Defendant had no expectation of confidentiality.
We nevertheless hold, as a matter of policy, that an expert's deposition taken pursuant to R. 4:14-9(e) should not be substantively usable by an adversary over objection. In our view R. 4:14-9(e) is a valuable innovation whose use should be encouraged. It is cheaper for litigants, more convenient for experts, and more efficient for the court to permit a party to present a videotaped deposition if the party elects to do so. It would discourage the use of the device if an expert's deposition could be used substantively by the other side. No useful purpose would be served. Furtherance of the Rule's purposes dictates that a trial court should not ordinarily permit the use by another party of an R. 4:14-9(e) deposition of a treating physician or an expert as substantive evidence. There may be special circumstances justifying exceptions to the general rule. There are none present here, and it would not be useful to attempt to anticipate them.[4]
*382 We disagree with plaintiff's argument that part of the trial is taking place when the deposition is taken and may not be changed. R. 4:14-9(e) does not say the deposition of an expert taken for use at trial has to be used but only that it "may be used." The innovation of R. 4:14-9(e) is to make the deposition usable whether or not the witness is available to testify. The purposes are to achieve economy, convenience and efficiency, but not to preset in amber parts of the trial proofs, or to prefer recorded to live testimony, or to obligate a party to present a witness  live or on tape.
If a party does not use a R. 4:14-9 videotaped deposition, but calls the expert as a witness, an adversary may be put at something of a disadvantage, because deposition cross-examination may have exhausted counsel's wiles, and because trial appearance gives the witness the opportunity for review and correction of testimonial flaws in the deposition. That fact is partially offset, however, by the opportunity to use the deposition to impeach in cross-examination. In addition, if deposition testimony is inconsistent with trial testimony, it is admissible as substantive evidence. Evid. R. 63(1)(a). Also, if an expert witness is not produced at trial and the R. 4:14-9(e) deposition is not offered, an adversary party would ordinarily be entitled to the benefit of an adverse inference. Parentini v. S. Klein Dept. Stores, 94 N.J. Super. 452, 457 (App.Div.), certif. den. 49 N.J. 371 (1967); Kochen v. Consolidated Pol., etc., Pension Fund Com'n., 71 N.J. Super. 463, 473 (App.Div. 1962). The testimony would be available to the party but not the adversary, production by the party would be natural, and the opinion testimony would usually not be cumulative or inferior to other evidence. Thus, the concerns of State v. Clawans, 38 N.J. 162 (1962) and Wild v. Roman, 91 N.J. Super. 410 (App.Div. 1966), would normally be satisfied. See also Anderson v. Somberg, 158 N.J. Super. 384, 394-395 (App.Div.), certif. den. 77 N.J. 509 (1978). But see McQuaid v. Burlington County Memorial Hosp., 212 N.J. Super. 472 (App.Div. 1986).
*383 We need not evaluate the Law Division's denial of defendant's motion for an additional psychiatric examination by another expert. Before the retrial, which will be at least two and one-half years after the first trial, it seems appropriate for both parties to have the opportunity for reexaminations. There is no reason why defendant should be limited to the expert first retained.
Affirmed as to liability. Reversed as to damages and remanded for retrial as to that issue.
NOTES
[1] There is no question of Tenore's continued viability. See R. 1:7-1(b); Friedman v. C & S Car Service, 108 N.J. 72, 77 (1987).
[2] At the retrial the impact of Friedman v. C & S Car Service, 108 N.J. at 78-79, on the expert's "zero discount" methodology will have to be considered.
[3] This is not a situation in which defendant can be said to have adopted Dr. Pelicci's views as its own. See Sallo v. Sabatino, 146 N.J. Super. 416 (App.Div. 1976), certif. den. 75 N.J. 24 (1977).
[4] We need not wrestle with the application of this rule to treating physicians. See Kurdek v. West Orange Educ. Bd., 222 N.J. Super. 218 (Law Div. 1987); Serrano v. Levitsky, 215 N.J. Super. 444 (Law Div. 1986); Piller v. Kovarsky, 194 N.J. Super. 392 (Law Div. 1984).