241 N.J. Super. 108 (1990)
574 A.2d 496
BERNARD GRAHAM AND CLARA GRAHAM, PLAINTIFFS-APPELLANTS, CROSS-RESPONDENTS,
v.
ISAAC GIELCHINSKY, M.D., AND NEWARK BETH ISRAEL MEDICAL CENTER, DEFENDANTS-RESPONDENTS, CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1990.
Decided May 8, 1990.
*110 Before Judges ANTELL, ASHBEY and STEIN.
Karen Ann Kubulak argued the cause for appellants-cross-respondents (Garruto, Galex & Cantor, attorneys; Karen Ann Kubulak, on the brief).
Jeffrey W. Moryan argued the cause for respondent-cross-appellant (Connell, Foley & Geiser, attorneys; George J. Kenny and Jeffrey A. Moryan, of counsel; Ernest W. Schoellkopff and Jeffrey W. Moryan, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
In this medical malpractice action plaintiffs appeal from a jury verdict in favor of defendant Dr. Gielchinsky (defendant), claiming that the result below was caused by the trial misconduct of opposing counsel and erroneous evidence rulings by the trial court. The complaint was dismissed as to defendant *111 hospital before trial. Defendant cross-appeals from the trial court's denial of his motion to dismiss which was made on the grounds that the complaint was barred by the statute of limitations and that plaintiff had failed to make a prima facie case of malpractice.
On April 14, 1982, defendant performed an aortic valve replacement and a coronary bypass operation on plaintiff in the Newark Beth Israel Hospital. As part of the procedure defendant attached a pacemaker together with five epicardial wires within the plaintiff's chest. The pacemaker and two of the wires were removed after the surgery. During the weeks following the operation plaintiff developed a chest wall infection which defendant unsuccessfully treated, first with antibiotics and then surgically by opening and draining the wound. Around July 10, 1982, plaintiff was released as an outpatient and continued taking antibiotics for the infection. However, the wound did not fully heal and, despite recourse to stronger antibiotics, by September 21, 1982, it appeared to have worsened.
Defendant performed a third operation on November 9, 1982, to remove pus, cleanse the wound and take a culture of the infected tissue. Defendant did not succeed in eliminating the infection.
In September 1983 plaintiff entered the Perth Amboy General Hospital for treatment of an unrelated urological problem. While there Dr. Sarkarias performed exploratory surgery on plaintiff's chest and removed the three epicardial pacemaker wires that had been left in plaintiff's chest after the surgery in April, 1982. Thereafter the condition cleared up.
In bringing this action, plaintiff alleged that defendant's malpractice lay in failing to remove the epicardial wires and in failing later to take proper cultures from the site of the infection to determine its etiology. Plaintiff contends this would have revealed that a foreign body was the causative factor. The defense, evidently believed by the jury, was that *112 the decision not to probe for the three epicardial wires involved the exercise of medical judgment, that to have done so would have posed the risks of injury by spreading the infection and inducing uncontrollable bleeding. Defendant further asserted that the area of infection was not within the operative field and that it was not his responsibility, but the responsibility of the attending physician, to take the cultures.
Plaintiff first contends that he was prejudiced by remarks which defendant's counsel made in his opening statement. Counsel told the jury that the senior partner in the firm representing plaintiff had served as best man at the wedding of Dr. Silva, the physician who was expected to testify as an expert witness on behalf of plaintiff. The statement was objected to the following day when plaintiff's attorney informed the court that it was not the senior partner in her firm who had served as best man, but a former associate of the office. The subject was introduced by defense counsel in the belief that it would be relevant to an appraisal of Dr. Silva's credibility as a witness. The trial court immediately called counsel's mistake to the attention of the jury and instructed the jury that since the relationship never existed the offending remark should not even be considered in its deliberations. The situation, which, parenthetically, we deem innocuous, was promptly dealt with by the trial judge's immediate instruction to the jury and we conclude that defense counsel's statement was not capable of impairing plaintiff's right to a fair trial. See State v. Winter, 96 N.J. 640, 647, 477 A.2d 323 (1984).
Prior to trial plaintiff was sent by his predecessor attorney to the office of Dr. Frederic F. Primich for an expert opinion as to defendant's alleged malpractice. Dr. Primich reported to counsel that the epicardial wires were not in the operative field during the valve replacement operation and that it would have been an error in judgment for defendant to have removed them. In some way, not shown by the evidence, defense counsel came into possession of Dr. Primich's report and thereafter produced *113 him to testify as an expert on defendant's behalf. Plaintiff now argues that since Dr. Primich had been initially consulted by plaintiff, the court erred in permitting defendant to utilize Dr. Primich's expert testimony in his defense.
The question posed was considered in Cogdell v. Brown, 220 N.J. Super. 330, 531 A.2d 1379 (Law Div. 1987), under materially comparable circumstances. It was there concluded, after a survey of the authorities, that the interests of truth outweighed any expectation of allegiance a party might have in consulting a prospective expert witness in preparation for trial, and that "[n]o party to litigation has anything resembling a proprietary right to any witness's evidence." Id., at 334, 531 A.2d 1379. See also Kurdek v. West Orange Bd. of Educ., 222 N.J. Super. 218, 536 A.2d 332 (Law Div. 1987). Neither Serrano v. Levitsky, 215 N.J. Super. 454, 521 A.2d 1377 (Law Div. 1986), nor Piller v. Kovarsky, 194 N.J. Super. 392, 476 A.2d 1279 (Law Div. 1984), are to the contrary. Both of those malpractice cases dealt with attempts by defendants to present opinion evidence by plaintiffs' treating physicians on the liability aspects of the cases, and the particular circumstances there presented would have allowed such testimony to work unfairly to the disadvantage of the plaintiffs.
Plaintiff argues that since he did not intend to call Dr. Primich as a witness the doctor's report was not discoverable under R. 4:10-2(d)(3), and that the doctor's conduct in testifying was a breach of trust.
We find no error in the receipt of Dr. Primich's expert testimony on defendant's behalf. Like our dissenting colleague, we are at first discomfited by the fact that it was plaintiff who originally solicited Dr. Primich's opinion. Notwithstanding our initial response, the record convinces us that this witness's testimony was not used to give defendant any unfair advantage and that our anxieties are misplaced. Were the fact otherwise we would conclude differently.
*114 Dr. Primich was not plaintiff's treating physician and the patient-physician privilege under N.J.S.A. 2A:84A-22.2 does not apply. Moreover, plaintiff does not tell us of a single disclosure which might be regarded as having been made to Dr. Primich in confidence nor of any other way in which he might have been prejudiced by the doctor's testimony. Indeed, Dr. Primich's opinion was based entirely on the contents of the hospital records and nothing else. We find no substance in plaintiff's claim that a trust relationship was violated.
As to plaintiff's reliance on R. 4:10-2(d)(3), it suffices to say that the Rule is in no way implicated since Dr. Primich's report was not the subject of a discovery order. Finally, we know of no authority to support the dissent's assertion that the witness's expert opinion favorable to the defendant was unavailable for use at trial under the principle that it was the work product of plaintiff's lawyer.
Plaintiff also complains that in his examination of Dr. Primich, defendant's attorney violated the court's admonition not to tell the jury that plaintiff had initially approached Dr. Primich for a favorable expert opinion. We have carefully examined the portions of the transcript relied upon by plaintiff for this contention and are satisfied that the jury could not have inferred the forbidden information from the questions asked and answers given. We have also examined defense counsel's closing statement to the jury in light of plaintiff's claims of prejudice resulting therefrom and conclude that plaintiff's contentions are lacking in merit. R. 2:11-3(e)(1)(E).
Turning to the cross-appeal, we conclude that the suit, which was begun on April 8, 1985, was not barred by the statute of limitations, N.J.S.A. 2A:14-2. Defendant argues that by January or February of 1983 plaintiff was in possession of sufficient facts which equated with a cause of action. Burd v. New Jersey Tel. Co., 76 N.J. 284, 291, 386 A.2d 1310 (1978). In our view, the cause of action did not accrue until at least October 4, 1983, when Dr. Sarkarias removed the three wires *115 which defendant had left within plaintiff's chest. This conclusion takes into account "the nature of the injury and the difficulty inherent in discovering certain types of injuries." Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 428, 527 A.2d 66 (1987). Furthermore, plaintiff testified that as of January 1983, when he was still under defendant's care, defendant assured him "it is looking good." Clearly to be considered under the discovery rule, "essentially a rule of equity," Lopez v. Swyer, 62 N.J. 267, 273, 300 A.2d 563 (1973), was "the relationship, if any, between defendant's representations and plaintiff's delay in commencing this action." Abboud v. Viscomi, 111 N.J. 56, 63, 543 A.2d 29 (1988).
We also find defendant's contention that plaintiff failed to show a prima facie case of malpractice lacking in merit. R. 2:11-3(e)(1)(E).
Affirmed on the appeal and cross-appeal.
A.M. STEIN, J.A.D., concurring in part and dissenting in part.
I agree that plaintiffs' claims are not barred by the two-year personal injury statute of limitations, N.J.S.A. 2A:14-2. However, I conclude that plaintiffs are entitled to a new trial because the judge improperly permitted Dr. Primich, originally retained by plaintiff, to testify as an expert for the defense. Moreover, Dr. Primich was falsely portrayed to the jury as an impartial witness giving involuntary testimony under compulsion of a subpoena.
I disagree with the notion that an expert can take money from a litigant for the evaluation of a case and the rendering of a report, and then testify for the other side at trial. Such shenanigans are prohibited by work-product doctrine and by the covenant of good faith and fair dealing implicit in the contract of hire.
The majority finds authority for such side-switching in a trial court opinion, Cogdell v. Brown, 220 N.J. Super. 330, 333-337, *116 531 A.2d 1379 (Law Div. 1987), where the judge permitted plaintiffs' attorney to call as an expert a physician earlier retained by the defense. That case is distinguishable. One year before trial, plaintiffs' counsel advised his adversary that he intended to use that physician, Dr. Taft, as his witness. Just before jury selection, when it was too late for plaintiffs to obtain a replacement expert with suitable qualifications, defense counsel moved to bar Dr. Taft from testifying on plaintiffs' behalf. The court correctly ruled that the barring of Dr. Taft's expert testimony would deprive plaintiffs of a fair trial. Id. at 333, 531 A.2d 1379.
The language in Cogdell is more expansive than required by the facts of that case. The opinion gives license to fence-jumping by experts for two reasons:
1. It "affirms the principle that a trial is essentially a search for the truth." 220 N.J. Super. at 333, 531 A.2d 1379; and
2. No party has a "proprietary right" to the knowledge of a witness. Id. at 334-335, 531 A.2d 1379 (citing Stempler v. Speidell, 100 N.J. 368, 381, 495 A.2d 857 (1985), which in turn quotes Doe v. Eli Lilly & Co., 99 F.R.D. 126, 128 (D.D.C. 1983)).
The thought that such trial strategy is acceptable under the guise of "a search for the truth" is as inaccurate as it is pretentious. The retention of an expert is not a search for facts in the possession of a particular person. It is a search for an expert who will render a favorable opinion. If the opinion is unfavorable, the expert's work is usually concluded. Litigants should not face testimony from an expert whose preliminary opinion was sought in the investigative stage of a lawsuit. This kind of tampering with the lawyer's investigation of his client's cause is repugnant to the well-established principle that the work product of a lawyer, compiled in anticipation of litigation, is protected against disclosure.[1]Hickman v. Taylor, 329 U.S. *117 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451, 461 (1947). The principle is embodied in our court rules. R. 4:10-2(c), (d). Reports of experts not expected to testify at trial are specifically protected from discovery except under exceptional circumstances, where it "is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means." R. 4:10-2(d)(3).
If the report's content is privileged against disclosure, so should the testimony of the report's author.
I dispute the application in this case of a pronouncement that no party has a "proprietary" right to the knowledge of a witness. A party who retains an expert and pays for his or her opinion expects that the expert will have the decency to refrain from testifying in the same case on behalf of an adversary. This is implicit in the contract of hire, dishonor of which is a breach of the implied covenant of good faith and fair dealing. Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 129-130, 351 A.2d 349 (1976); Noye v. Hoffmann-La Roche, Inc., 238 N.J. Super. 430, 432, 570 A.2d 12 (App.Div. 1990). See also, Spaulding v. Hussain, 229 N.J. Super. 430, 440, 551 A.2d 1022 (App.Div. 1988) (treating physician has duty to render reasonably required litigation assistance to patient).
There is no need to require an express contractual provision that the expert will not testify against a former client in the same case. This understanding is implicit in the agreement of hire. Moreover, unless our decisional law sets the matter straight, there is the realistic danger that some judge will render such a provision unenforceable, as a supposed subversion of the "search for truth," or because "no party has a proprietary right to the knowledge of any witness, even an expert witness." Other jurisdictions compel the testimony of an expert witness. Annotation, "Compelling testimony of opponent's expert in state court," 66 A.L.R.4th 213 (1988).
*118 The majority embraces an undesirable proposition of law, one violative of well-established work product and contract principles. It also permits a distraction from and a distortion of the fact-finding process. If, as in Cogdell, the jury is permitted to learn who first retained the expert (230 N.J. Super. at 336-337, 531 A.2d 1379), it will become enmeshed in the collateral issue of credibility to the exclusion of a fair and impartial evaluation of the evidence presented, particularly the testimony of expert witnesses. The first expert consulted by a party does not necessarily have the best opinion. Yet that opinion will gain an exalted status just because a party has rejected it as unfavorable. The testimony is presented at trial not only for its evidentiary value, but because the offering party wishes to depict the adversary as engaging in some underhanded concealment.
The fact-finding process is no better served even if the jury is not told who first retained the expert. Consider what happened in this case. The trial judge specifically warned defense counsel and Dr. Primich not to advise the jury that plaintiff had first approached this doctor for an opinion as to defendant's malpractice. Counsel and the witness nevertheless attempted to circumvent the judge's rulings by oblique references to the circumstances under which plaintiff was first in contact with Dr. Primich. These efforts were unsuccessful only because their cryptic statements did not translate to the jury.
Defense counsel was more successful in his efforts to present this witness to the jury as impartial and objective. At the conclusion of his direct testimony, Dr. Primich stated that he had testified under subpoena. Later, in summation, defense counsel reviewed the qualifications and testimony and his perception of the credibility of the various physicians who testified for both sides. He then stated:
If that's not enough to weigh down the scales, you get Dr. Primich.
Now, Dr. Primich examined the plaintiff in 1985. When he examined the plaintiff, he had records and he looked at those records and he thought about the whole matter for about a month, and then he wrote an opinion and it is *119 interesting to note that that opinion was written in July 1985, but Dr. Silva [plaintiffs' expert] was never given a copy of it....
Dr. Primich's report was written about a year and a half after the operation, was subpoenaed to come here to testify. Not a paid expert. Nobody retained him on behalf of Dr. Gielchinsky to come here and testify. Told you what his honest opinion was based on the standard of care in this case. [emphasis added]
Counsel was asked at oral argument about the circumstances under which Dr. Primich testified for Dr. Gielchinsky. He advised that he had contacted the doctor by telephone and asked him to testify. Dr. Primich responded that counsel had better serve him with a subpoena. Counsel did so.
Nobody asked Dr. Primich out of the jury's presence (Evid.R. 8) if he understood that his expert testimony could not be compelled by subpoena. Genovese v. NJ Tr. Rail Operations, 234 N.J. Super. 375, 380, 560 A.2d 1272 (App.Div. 1989). This was the procedure followed in Kurdek v. West Orange Educ. Bd., 222 N.J. Super. 218, 221, 536 A.2d 332 (App.Div. 1987). The conclusion is inescapable that had this inquiry been made, Dr. Primich's testimony would have been revealed as voluntary, given on behalf of the defendant.
Dr. Primich's testimony was improperly presented as objective although he was appearing voluntarily, not under compulsion of subpoena. To present his expert opinion as compelled and to argue in summation that the doctor was an impartial, unbiased witness was a gross distortion of the truth, so prejudicial that it had the clear capacity to produce an unjust result. R. 2:10-2.
In Genovese v. NJ Tr. Rail Operations, supra, we held that plaintiff could not introduce at trial the videotaped de bene esse deposition of defendant's expert, taken pursuant to R. 4:14-9. We concluded that use of this valuable device would be discouraged if the other side could use this deposition. 234 N.J. Super. at 381, 560 A.2d 1272. Our ruling in Genovese went as far as *120 was necessary under the facts of that case. This case requires us to advance an additional step. With rare exception, the testimony of an expert originally retained by one side should be excluded for use by the other side. Allowance of such testimony is fraught with a high potential for mischief. It is a diversion from the jury's fact-finding mission.
I anticipate the contention that such a rule of exclusion is unworkable because one side may retain the services of all available experts in a particular field, subject or profession. Our court rules already accommodate this situation. R. 4:10-2(d)(3) compels the release of a non-testifying expert's report under those exceptional circumstances where it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means. See also, Environmental Protect. Dep't v. Ventron Corp., 182 N.J. Super. 210, 223, 440 A.2d 455 (App.Div. 1981), aff'd as mod. sub. nom. Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983).
I would reverse and grant plaintiffs a new trial at which Dr. Primich's testimony would be excluded.
NOTES
[1] When asked at oral argument how he obtained a copy of Dr. Primich's report, defense counsel responded, "This is the truth. I don't remember."