637 A.2d 223

JESSICA STIGLIANO, AN INFANT, BY FRANK STIGLIANO, HER FATHER, AND MARIA STIGLIANO, HER MOTHER, HER PARENTS AND NATURAL GUARDIANS; AND FRANK STIGLIANO AND MARIA STIGLIANO, INDIVIDUALLY; AND AS THE PARENTS AND NATURAL GUARDIANS OF THE INFANT, JESSICA STIGLIANO, PLAINTIFFS-RESPONDENTS, v. CONNAUGHT LABORATORIES, INC., A FOREIGN CORPORATION AND NIHAL S. NAGAHAWATTE, M.D., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1993—Decided February 15, 1994.

Before Judges GAULKIN, R.S. COHEN and D'ANNUNZIO.

*Stephen O. Mortenson* argued the cause for appellant Nihal S. Nagahawatte (*Mortenson and Pomeroy*).

*Keith G. Von Glahn* argued the cause for appellant Connaught Laboratories, Inc. (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys; *Sally H. Atkins,* on the brief).

*E. Drew Britcher* argued the cause for respondents (*Stern, Steiger, Croland, Tanenbaum & Schielke,* attorneys; *Mr. Britcher* and *Armand Leone, Jr.,* on the brief).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

In this medical malpractice and product liability action, defendants appeal by leave granted (*R.* 2:2–4) from a pretrial order foreclosing them from presenting testimony at trial of plaintiff Jessica Stigliano's treating physicians "concerning the cause of [her] seizure condition." We reverse.

Plaintiffs' several causes of action are bottomed on the contention that Jessica suffers from a seizure disorder caused by an administration of DPT vaccine.[1] Jessica experienced her first seizure some six hours after her March 17, 1987 injection. Since then she has had frequent seizures, the number and intensity of which are poorly controlled by medication; all the treating and examining doctors agree that she has a chronic or primary seizure disorder. Plaintiffs' experts have submitted reports finding a causal relationship between the DPT immunization and the seizure disorder. Defendants' expert *reports* assert that DPT vaccine does not cause seizure disorders; as stated in one of those reports, "the role of DPT . . . is that it *reveals* the [seizure] disorder, but has no role in causation."

Defendants have given notice that they intend to present testimony at trial from three physicians who had been consulted in Jessica's treatment between 1987 and 1991, Dr. Abraham Chutorian, Dr. Jeffrey Buchhalter and Dr. Joseph Schneider. In their consultations, all three doctors had prepared written reports describing their findings, diagnoses and recommendations for treatment and for diagnostic studies. With respect to the cause of

---

[1] The vaccine protects against diphtheria, pertussis (whooping cough) and tetanus; alleged adverse reactions are commonly laid to the pertussis component. *See generally Niemiera v. Schneider,* 114 *N.J.* 550, 555 *A.2d* 1112 (1989).

the seizure disorder, Dr. Chutorian reported that the history and findings "are not compatible with a pertussis encephalopathy [*i.e.,* brain disease]"; Dr. Buchhalter reported that "[t]he etiology is unclear"; Dr. Schneider reported that Jessica's condition "is not consistent with a pertussis encephalopathy."

In anticipation of trial, defendants took videotaped *de bene esse* depositions (*R.* 4:14–9) of Drs. Chutorian and Buchhalter, in which counsel explored the doctors' opinions as to the causes of Jessica's disorder. Dr. Chutorian testified that the scientific literature discloses "a controversial question" as to whether DPT vaccine causes any encephalopathy, with some investigators doubting that DPT encephalopathy "exists at all" and others finding it as a "rare occurrence, occurring maybe ... between 1 in 200 and 1 in 250 thousand children who are immunized." Dr. Chutorian did not state his own position, if any, in that controversy. He testified, however, that diagnoses of DPT encephalopathy are commonly based on findings of "overwhelming" disease immediately following a DPT shot; Jessica's seizure disorder, he said, was "in no way" of that kind.

In his deposition, Dr. Buchhalter made similar references to the conflicting medical literature. He stated his own view that "there is no convincing evidence in the medical literature that [Jessica's] kind of seizure disorder can follow DPT immunization"; accordingly, in seeking to determine "why she was having seizures," he did not consider the DPT shot as a possible cause. However, like Dr. Chutorian, he found that Jessica did not have the "profound" kind of encephalopathy that the disputed literature attributed to DPT vaccine.

After the depositions were taken, plaintiffs moved to preclude defendants "from making any reference at trial to the unsolicited opinions on the causation of [Jessica's] seizure disorder." They argued that (1) the asserted "unsolicited opinions ... are protected from disclosure by the physicians' fiduciary duties to [Jessica]," (2) because the treating physicians were not to be called to testify on plaintiffs' behalf concerning causation, their opinions should be

available to defendants only upon a showing of "exceptional need" and (3) the causation testimony of the treating physicians would be "unduly prejudicial and should be excluded under *Evid.R.* 4 [now *N.J.R.E.* 403]." The motion judge granted the requested relief, reasoning as follows:

> But we start with a premise that these are treating physicians or should be in a category of treating physicians. They're not experts. And the general rule is that the treating physician should not be—is not allowed to render opinions that would be harmful to a patient's case; that that obligation is owed by a physician to his patient. And I think that that's the rule that ought to pertain here.
>
> The jury is not being precluded from all the opinions are the same opinions that these doctors held and expressed in the depositions. They're going to get those opinions. They're going to get them from experts called by the defendant. Defendant obviously feels, and I concur, that those opinions would be much more impression [sic] or affect the jury to a greater degree if they came from the plaintiff's own treating physicians rather than what he describes as hired guns. But the fact is that the information is going to be given to the jury and they're going to have it and they're going to be able to weigh it. And it seems to me that the plaintiff would be unduly prejudiced if I were to permit the physicians to render their opinions which would seriously affect the theory of the plaintiff's case.

 That analysis is flawed. There is no "general rule" that a treating physician "is not allowed to render opinions that would be harmful to a patient's case." Our case law does recognize a plaintiff's legitimate interest in assuring that his or her physician "will not voluntarily provide evidence or testimony that will assist the defendant's cause." *Stempler v. Speidell,* 100 *N.J.* 368, 381, 495 *A.* 2d 857 (1985) (citing with approval *Alexander v. Knight,* 197 *Pa.Super.* 79, 177 *A.*2d 142, 146 (1962) (noting that a treating doctor owes "a duty to refuse affirmative assistance to the patient's antagonist in litigation")). *See also Serrano v. Levitsky,* 215 *N.J.Super.* 454, 521 *A.*2d 1377 (Law Div.1986) (holding that "an unsolicited opinion" in the report of plaintiff's treating physician exculpating the defendant doctor is not admissible against plaintiff); *Piller v. Kovarsky,* 194 *N.J.Super.* 392, 476 *A.*2d 1279 (Law Div.1984) (barring treating physician from testifying as defense liability expert that defendant physician was not negligent); *cf. Graham v. Gielchinsky,* 126 *N.J.* 361, 373, 599 *A.*2d 149 (1991) (noting that "in the absence of exceptional circumstances ... courts should not allow the opinion testimony of an expert

originally consulted by an adversary"). But a plaintiff's treating doctors can testify, and can be compelled by subpoena to testify, for a defendant "concerning their physical examinations and diagnoses of plaintiff." *Spedick v. Murphy*, 266 *N.J.Super.* 573, 592, 630 *A.*2d 355 (App.Div.1993); *see also Kurdek v. West Orange Educ. Bd.*, 222 *N.J.Super.* 218, 536 *A.*2d 332 (Law Div.1987) (permitting defendant to call plaintiff's treating physician to state his prognosis of no permanency).

Plaintiffs here accept that Drs. Chutorian, Buchhalter and Schneider are "treating physicians" and that their testimony is not subject to the physician-patient privilege. *N.J.S.A.* 2A:84A–22.4; *Kurdek*, 222 *N.J.Super.* at 224, 536 *A.*2d 332. And plaintiffs do not dispute defendants' right to call the treating doctors to testify concerning their examinations, findings, diagnoses, recommended treatments and prognoses. Plaintiffs contend, however, that the doctors' conclusions as to etiology—whether Jessica's seizure disorder was caused by DPT vaccine—should be out of bounds. We disagree.

Each of the three doctors was consulted in Jessica's treatment. Each submitted a report directly to Jessica's primary treating physician. Each report set forth not only the doctor's findings and diagnosis, but his assessment of the causation of Jessica's seizure disorder. Those opinions of causation were not unrelated to the treatment, unnecessary, volunteered or unsolicited. The deposition testimony makes abundantly clear that the appropriate management of a seizure disorder requires assessment of its nature, severity and cause. Dr. Buchhalter, for example, testified that certain medications are particularly effective where "one particular spot in the brain," such as a tumor or a stroke, can be identified as the cause of seizures, but where the abnormality appears "in multiple places in the brain" then other medications as well as diet are "more useful." Both Dr. Buchhalter and Dr. Chutorian stated that a DPT encephalopathy would involve not only seizure activity but such severe symptoms as loss of motor control, mental retardation, stupor, and frequent refractory sei-

zures; a finding of the presence or absence of DPT encephalopathy would surely impact on both diagnosis and treatment.

We therefore see no reason to distinguish the doctors' testimony as to causation and their testimony as to diagnoses and prognoses. All arise out of and are inextricably linked to Jessica's treatment. Defendants are entitled to elicit that relevant and material evidence from the treating physicians. That defendants could obtain similar testimony from their retained experts does not justify foreclosing them from inquiring of the treating doctors. If the testimony of the treating doctors is harmful to plaintiffs, it is not unfairly so. *See Spedick,* 266 *N.J.Super.* at 592, 630 *A.*2d 355.

Paragraph 2 of the April 19, 1993 order is reversed.