SETH C. GORDON vs. ROSE A. CONLEY and Trustees.

JAMES B. O'NEIL vs. ROSE A. CONLEY and Trustees.

HERBERT F. TWITCHELL vs. ROSE A. CONLEY and Trustees.

Cumberland.    Opinion November 5, 1910.

*Witnesses. Compensation. Experts. Statute 1907, chapter 66. Revised Statutes, chapter 117, section 13.*

Where physicians were employed by the plaintiff in a personal injury case to examine her physical condition to enable them to qualify as medical expert witnesses at the trial, and made the examination and appeared voluntarily, and testified without any agreement as to their compensation, they were entitled to reasonable compensation for their services above the legal fee due to the ordinary witness prescribed by Revised Statutes, chapter 117, section 13, as amended by Public Laws, 1907, chapter 66.

Where the decision of a case upon the merits is clearly correct, it will not be disturbed on review because of abstract errors of law not affecting the truth of the result.

On motion and exceptions by defendant.    Overruled.

Three actions of assumpsit on accounts annexed, severally brought in the Superior Court, Cumberland County, by the plaintiffs, physicians and surgeons, against the defendant, to recover for professional services as expert witnesses for the defendant in an action brought by her against the Grand Trunk Railway to recover for personal injuries.    Plea, in each action, the general issue, with a brief statement, in each action, alleging "that the claim upon which the plaintiff now sues her in this action, has been determined, adjudged and settled by our Supreme Court, at a term thereof, which was begun and held at Portland in said County, on the second Tuesday of January, A. D. 1909, by a decree of the Honorable Henry C. Peabody, Associate Justice of said Court, who presided at said term of said court and which decree was handed down by the said Honorable Justice on the twenty-fifth day of January, A. D. 1909, and is now on file with the clerk of said Court: and the defendant now is and

always has been ready to pay and settle said claim in accordance with said decree." The three actions were tried together. Verdict for Dr. Gordon for $112.50. Verdict for same sum for Dr. O'Neil, and verdict for Dr. Twitchell for $150. The defendant filed a general motion, in each action, for a new trial and also excepted to several rulings of the presiding Justice.

The case is stated in the opinion.

*Joseph B. Reed*, for all plaintiffs.

*Henry J. Conley*, for defendant.

SITTING: EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

SPEAR, J. These were three actions of assumpsit on accounts annexed, severally brought by Seth C. Gordon, James B. O'Neil and Herbert F. Twitchell, all of Portland, in said County of Cumberland, physicians and surgeons, against Rose A. Conley and Trustees, to recover for professional services as expert witnesses, three days each in the case of Dr. Gordon and Dr. O'Neil, and four days in the case of Dr. Twitchell, they having, at the request of Rose A. Conley, and her attorney, Henry J. Conley, made a physical examination of the said Rose A. Conley, and at the request of her said attorney, attended court and gave evidence of their opinion relative to her condition and the causes that might have produced it, in an action for personal injuries brought by said Rose A. Conley against the Grand Trunk Railway, tried at the January term of the Supreme Judicial Court for Cumberland County, A. D. 1908.

These three cases present substantially the same conditions of facts and were tried together at the December term of the Superior Court for Cumberland County, A. D. 1909.

The jury rendered a verdict for the plaintiffs, Seth C. Gordon and James B. O'Neil, each the sum of $112.50, and for the plaintiff, Herbert F. Twitchell, the sum of $150.00. The defendant introduced no testimony. The evidence conclusively shows that the plaintiffs were employed by the defendant or her attorneys to make an examination of her physical condition for the purpose of enabling

them to qualify as medical expert witnesses in her case about to be tried in the Supreme Court against the Grand Trunk Railway for injury alleged to have been received by her through the negligence of the railway. While Dr. O'Neil was her regular attending physician he nevertheless was used as an expert upon the witness stand. The evidence of Judge Foster, who was counsel for the defendant in her case against the railway, is so conclusive upon the nature of the employment of the three physicians in case at bar, their required attendance at court during the trial and the time they spent at court, that the verdict of the jury must be regarded as fully warranted upon this issue if the law permits it to stand. The plaintiffs were not summoned but appeared voluntarily at the request of the defendant's counsel, but without any agreement as to the compensation they were to receive for their services. Under these conditions the plaintiffs contend that they were entitled to reasonable compensation instead of the regular witness fee.

But the defendant asserts, admitting the facts as claimed by the plaintiff, that they are entitled to only the witness fees provided by law. The defendant's own statement of her contention is this: "The defendant claims that the compensation of all witnesses, including expert witnesses, is established by sec. 13 of chap. 117 of the Revised Statutes as amended by chap. 66 of the Public Laws of 1907, which reads as follows, to wit: 'Witnesses in the supreme judicial or superior courts and in the probate courts, and before referees, auditors or commissioners specially appointed to take testimony shall receive one dollar and fifty cents, or before county commissioners, one dollar for each day's attendance, and six cents for each mile travel going out or returning home; and before a justice of the peace, a judge of a municipal or police court, fifty cents a day for attendance, and for travel the same as at the court aforesaid.'

"As there is no other provision made in our statutes for the payment of witnesses, the Courts nor the law cannot distinguish between different classes of witnesses, between 'expert' testimony, so called, and that which is not expert, but must pay them all the same fee, which is the fee established by law."

It will be observed that the question raised is not whether an expert witness can be summoned into court in the regular way and be required to give in evidence all the knowledge he may have acquired as an expert upon a particular subject under investigation, for the regular witness fee, but whether having been employed by a party to give special attention to the investigation of a matter out of court and then to appear in court, not only to testify as an expert witness but to remain in court for a specific length of time with loss of regular occupation, not by order of the court but by request of the party employing, a witness is entitled to receive reasonable compensation beyond the regular witness fee for such services.   If a party saw fit to summon an expert witness to testify in court without any knowledge as to what he might say, whether the witness would be required for the usual fee to give all the expert knowledge he might have upon the subject under investigation, does not now arise.   That is not the case before us.   In the case at bar the plaintiffs, without summons, came into court not only to testify, but by special request remained in court three days in order to listen to the experts on the other side of the case, advise counsel and testify in rebuttal, if necessary, while a witness under subpœna after testifying for an hour or half an hour might be excused by the court and enabled to pursue his ordinary occupation instead of losing three days.   He is under no contractual obligation whatever to the party calling him.   He cannot even be unwillingly interviewed before testifying.   He takes the stand, testifies and leaves, it. This is all he is required by law to do.   The court of course could require him to remain in attendance, but it is an unusual case in which an expert witness, capable of earning perhaps one hundred dollars per day would be required to remain at $1.50 per day for the benefit of private interests.   Hence it appears that a witness summoned into court, and for non-appearance subject to contempt, stands in an entirely different relation to the court and the parties, from the witness who appears in court without summons but upon a special agreement not only to prepare and testify but to remain in court for the special benefit of the party calling him.   Such a witness performs services outside the statutory requirement and is

entitled to whatever his services are reasonably worth above the legal fee due to the ordinary witness. This conclusion with respect to the rights of expert witnesses brought into court, without summons, upon agreement to perform services, not required by law of a witness summoned in the regular way, seems not only to be reasonable and equitable but is fully sustained by a strikingly parallel case, *Barrus* v. *Phaneuf*, 166 Mass. 123.

It should be here observed that the case at bar is stronger in favor of the doctrine herein promulgated than the Massachusetts case, inasmuch as in the latter the expert was regularly summoned and accepted without protest the statutory fee and was not in fact asked questions calling for his opinion as an expert. This case was an action of contract to recover extra compensation as an expert. In stating the case the court say : "The jury must have found upon the evidence that the defendant engaged the plaintiff to go into court at a future date, and testify for him as an expert, in regard to a matter which the plaintiff had examined as a civil engineer. . . . The plaintiff agreed to do this and talked over the matter, and went into court and testified, and during the progress of the trial advised the defendant's attorney in regard to questions to be asked to himself and to other witnesses." It would be difficult to find a state of facts more similar than those disclosed in the case at bar to those in the case quoted. Judge Foster, who assisted in the trial of this case and "examined all the witnesses of the plaintiff and cross-examined all the witnesses for the defense, and opened and argued the case," says that he examined all the plaintiffs as expert witnesses ; consulted with them relative to their testimony before it was put on ; had to have them " in court for the reason that he did not know what the defense was to prove or attempt to prove, and therefore must have their attendance, not only during the introduction of the plaintiff's evidence but also during the testimony of the defense in order that they might rebut if it became necessary," and that the nature of the case was such as to render expert testimony very material.

The court in the *Barrus case* states the application of the law to the existence of the facts there found as follows : "In the present

case, we are of opinion that, upon the facts in evidence, there was sufficient consideration to support a promise to pay a reasonable compensation, in addition to the statutory fees, and that the jury was warranted in finding a promise to that effect, or a mutual understanding that the plaintiff was to be so paid. If such promise was made, or such understanding existed, the plaintiff's right to recover would not be taken away or lost by his omission to claim or demand extra compensation or to notify the defendant that he should make such claim, or by his acceptance of the statutory fee without objection, or by the omission of the defendant at the trial to put any question to him of an expert witness, and the consequent omission of the plaintiff to testify as an expert. All these were merely matters for the consideration of the jury in determining whether any such promise was made, or such understanding existed." We also quote the following paragraph from *Dodge* v. *Stiles*, 36 Conn. 463, which is precisely applicable to the facts in the case at bar : "If a witness agrees with a party, that he will attend and testify without being summoned, and he is not summoned and so not brought under the order or censure of the court, we suppose any reasonable promise for compensation is good and may be enforced ; for the proceeding or service is not under nor in pursuance of the statute." The evidence in the case before us conclusively shows that the plaintiffs appeared at court at the request of the defendant without subpœna ; were not under the order of the court ; were under no obligation to remain in court ; and voluntarily remained for three days, one four, at the special instance of the defendant, as already appears from the testimony of Judge Foster.

It is the opinion of the court that the jury were fully warranted in finding an implied promise on the part of the defendant to pay the plaintiffs whatever their services were reasonably worth, and a sufficient consideration to support it. The plaintiffs rendered a bill of $50 per day. The jury allowed in their verdict $37.50 per day. In view of the reputation and skill of the plaintiffs it would seem that the damages were entirely reasonable.

During the course of the trial the defendant filed forty-three exceptions to the rulings of the presiding Judge. In view of the

conclusion of the court upon the motion it becomes immaterial whether the rulings of the court as abstract principles of law were right or wrong. We shall, therefore, not undertake to discuss the exceptions. Upon the law and legal evidence, whatever the errors in the rulings of the court, the result of the trial was evidently right. It would seem like trifling with the ends of judicial procedure to say that an erroneous ruling, which did not affect the truth of the result, should be regarded as a sufficient reason for the overturning of a fair and honest judgment. If the court erred, the jury did not. They were right. If the exceptions were sustained and the case retried along the lines of law laid down in the discussion of the motion, the only possible difference in the result would necessarily be confined to the amount of damages a new jury might render. But as the damages are clearly not excessive, the case should not be sent back for a new speculation upon this question.

In view of our conclusion upon the merits in this case we have not examined the exceptions for the purpose of determining whether as abstract principles of law the rulings of the court were right or wrong. A careful examination of the law and the evidence fully satisfies the court that the case upon its merits has been rightly decided and that the result should not be disturbed because of abstract errors of law, if they exist, which could not and do not interfere with the truth.

This view of the law with respect to the consideration of exceptions seems to have been established in one of the very first opinions ever announced by the court of Maine. In *Farrar et al.* v. *Merrill*, 1 Maine, 17, at the August term in 1820, the court laid down the rule of law in precise accord with that stated in the present opinion. The case was a writ of entry, putting in issue the title of a certain tract of land. It seems that a paper, apparently bearing upon the question was offered and admitted under objection. The court say that this evidence "being viewed alone would seem to be inadmissible as proof. . . . . . But we consider the question as to the admissibility of the paper as wholly unimportant in the view we have taken of the cause for we are all of the opinion that the facts appearing on the undisputed records of the proprietors, taken in connection

with some other facts which have been proved, fully justify the instructions and objections delivered by the Judge to the jury, and the verdict which the jury have returned.    It is our duty, in deciding on exceptions to look to the whole evidence, and not disturb the verdict when the facts proved, independent of the papers objected to, furnish the tenant with substantial defence."    It will also be observed that in *Elliott* v. *Sawyer*, 107 Maine, 195, this doctrine was reiterated.    In this case the court did not undertake to determine whether the testimony was erroneously admitted or not, saying :    "Exceptions to the erroneous admission of testimony will not be sustained, if the excepting party was not aggrieved by it."    Between these two decisions, covering a period coincident with the judicial history of the State, may be found numerous analogous cases by referring to the digest under "New Trial" and "Misdirection."    The doctrine, however, is so well established that it is not deemed necessary to cite the cases in detail.

*Motion and exceptions overruled.*