NATHANIEL B. STANTON, RESPONDENT, v. SAMUEL RUSHMORE, APPELLANT.

Submitted October 27, 1933—Decided January 5, 1934.

For the appellant, *Kunzman & Kunzman.*

For the respondent, *Joseph I. Bedell* (*Winfield S. Angleman,* of counsel).

The opinion of the court was delivered by

LLOYD, J. The question presented is whether a professional man may enter into a special contract at an agreed compensation for attendance as a witness and giving expert testimony upon the facts presented for determination in the trial of a cause.

Plaintiff below was a physician practicing medicine and surgery in Plainfield, and, according to his testimony, was asked to attend at the trial of a case in which the defendant Rushmore and his wife were parties. The doctor had observed the condition of Mrs. Rushmore and his evidence was desired to determine whether there were evidence of blows or bruises on her body or anything in her condition to lead him to believe that she had been subjected to violence or physical mis-

treatment. The doctor said he was not anxious to be a witness, that he was in hospital service, his time was not his own and that nothing further developed at the first communication between the parties. Later he was formally subpœnaed by the defendant. This angered the doctor and in response to telephone inquiry the defendant called and assured him that he would compensate him for his time, and pay him the amount that the doctor might receive for a gall bladder or appendicitis operation. The witness in response attended on the trial, gave expert testimony as requested, and sent his bill to the defendant for his services in the amount called for by the agreement. This not being paid, the present action was brought and judgment for the plaintiff resulted. The doctor further testified that his observation of the wife was from a professional standpoint and that his answers were made on that basis.

It is quite obvious that the attendance and testimony of the plaintiff were sought from him as an expert witness giving not alone facts of his observation of the wife, but expressing his professional judgment as to the condition he found and its cause. This being true, the question is squarely presented (for the first time in this state, it is asserted by appellant) whether a contract for such services is void because of public policy.

Numerous authorities are found in other jurisdictions, some holding in the affirmative and some in the negative. In Maine in *Gordon* v. *Conley,* 107 *Me.* 286, and *Barrus* v. *Phaneuf,* 166 *Mass.* 123, it was held in favor of the validity of such contracts. Cases in other jurisdictions hold to the contrary. This court is therefore at liberty to adopt the view that seems to it more in consonance with sound reasoning.

It is quite clear, and no argument is required to demonstrate, that all knowledge which one has of the actual facts of a litigation, whether the witnesses to those facts be professional or lay, is available and such witnesses thereof amenable to subpœna and compellable to give evidence of such facts. On the other hand when the experience, training and skill acquired by years of study and practice in a given profession or

calling exists, such knowledge and skill are not the property of litigants. It belongs to the professional man in his chosen occupation. Neither justice nor public policy in our view forbids that the expert shall retain such knowledge and skill free from divulgement except by his voluntary acquiescence, whether it be sought for compensation in the exercise of his skill, in the expression of his professional judgment privately, or when he is called for that purpose into a court of justice.

Experts in many lines are found essential to the determination of truth, and without them justice would frequently be defeated. The right to compensation for services so rendered we think is generally recognized in the bar of our state and compensation accorded accordingly. In private litigation those with expert knowledge are constantly called on to expend time in court and give professional testimony in the trial of civil causes. In criminal causes it is the constant practice to employ chemists, ballistic, handwriting and other experts in cases where certain crimes are involved, and in many instances successful prosecution could not be had without them. Such testimony involves long and tedious preparation, as well as the giving of the results of training and experience to the appointed judicial investigators. It would be unjust and without legal justification to withhold payment therefor.

It is said that the bias that one so called holds would tend to the giving of perjured or exaggerated testimony in favor of the one by whom the expert is employed. It is perhaps true that there is bias on the part of expert witnesses called by the respective parties to litigation, but it is likewise true that the same bias exists with respect to non-expert witnesses. Even though it were otherwise, and experts were more prone to favor the parties by whom called than is the ordinary witness, it would not justify compelling an expert to make available for the witness fees of attendance in court the product of years of industry and experience as implied in the appellant's contention in the present case.

Our conclusion is that an expert witness cannot as such be compelled to give testimony in response to subpœna, and

if such expert testimony is called for and given it is the right of such person to contract for and receive proper and adequate compensation therefor.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, LLOYD, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, DEAR, WELLS, DILL, JJ. 12.

*For reversal*—None.