STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-305,

JAW - CUM - 6/6/2012
STATE OF MAINE
Cumberland ss. Clerk's Office

JUN 06 2012

RECEIVED

MARSHALL CARPENTER, M.D.,

    Plaintiff

v.

DECISION AND ORDER

DANIEL LILLEY, ESQ., DANIEL
G. LILLEY, P.A.,

    Defendants

## INTRODUCTION

This case arises out of a dispute over the payment of a bill of a

maternal-fetal medicine expert in a medical malpractice case alleging a

catastrophic injury in the birth of a baby. This collection matter was before

the court for trial on April 19 and 20, 2012 on Dr. Carpenter's complaint

alleging breach of contract, quantum meruit and unjust enrichment.[1] Dr.

Carpenter claims that Mr. Lilley hired him to serve as an expert in the

medical malpractice case, regardless of the activity, at the rate of $500 per

hour from 2002 – 2007 and at the rate of $600 per hour from 2007 – 2009.

---

[1] Because the court decides this cased based on an express contract, the court does not reach
quantum meruit or unjust enrichment.

1

Mr. Lilley counters that he never agreed to pay the hourly rate of $600 and he challenges the amount of hours and the rate charged. Mr. Lilley argues that Carpenter already received more than $14,000 for his services, and that Dr. Carpenter is not entitled to any additional fees under any of Dr. Carpenter's theories because he has already received as much as the next-highest billing expert and more than four times what Mercy and Dr. Roper's expert received in the medical malpractice action.

The court heard testimony from Daniel Lilley, Esq., Julian Sweet, Esq., Christopher Nyhan, Esq., and Marshall Carpenter, M.D., and received into evidence 13 Carpenter exhibits and 6 Lilley exhibits.[2]

## FACTS

The evidence at trial and the findings of this court can be summarized as follows.

Dr. Carpenter is a medical doctor with a subspecialty in maternal-fetal medicine. Mr. Lilley is an attorney practicing law in Maine and is the owner of Daniel G. Lilley, P.A., a professional association, with a principal place of business in Portland, Maine. Mr. Lilley represented Holly and Ryan Wilson in the medical malpractice claim arising out of an catastrophic injury that the Wilsons' daughter sustained at birth. Mark Randall, Esq., an

---

[2] There were a number of exhibits that were marked for identification purposes but that were not admitted into evidence.

associate of Mr. Lilley, contacted Dr. Carpenter in 2002 and asked him to review medical records and provide his expert opinion whether there had been a breach of the standard of care. In 2002, Dr. Carpenter charged $500 per hour for expert witness work, regardless of the task performed. The Lilley firm agreed to pay Dr. Carpenter his customary rate and Mr. Randall sent Dr. Carpenter records to review. Dr. Carpenter reviewed the records, discussed the case with the Lilley law firm and sent a bill for expert services, which the Lilley firm paid in late 2002.

Two and one-half years later, in May 2005 the Lilley firm filed on behalf of the Wilsons, a Notice of Claim. Dr. Carpenter reviewed fetal monitoring recordings, reexamined medical records sent in 2002, and discussed the case with Mr. Lilley or his associates. (Over the course of the litigation, the Lilley firmed employed three associates in this matter, including Mr. Randall, Mr. Foster, Mr. Flynn, requiring Dr. Carpenter to become acquainted with each associate and bring the associate up to speed on the medical issues.) In 2005 Dr. Carpenter billed the Lilley firm 3.25 hours for expert services and the Lilley firm paid the bill.

In 2006, Dr. Carpenter billed the Lilley law firm for additional work performed on the case, including reexaming the 2002 medical records to confirm his opinions in light of the fact that Mr. Lilley had confused his

3

opinion with that of another potential expert. Dr. Carpenter also reviewed his expert designation and discussed the designation and his opinions with Christian Foster, Esq., another associate at the Lilley law firm. The Lilley law firm paid Dr. Carpenter for expert services provided in 2006.

On April 19, 2007, Dr. Carpenter appeared for his deposition and submitted a bill on April 20, 2007 for 13.5 hours he spent preparing for his deposition. Dr. Carpenter submitted a bill for additional $750 on June 5, 2007, after having spent 1.5 hours reviewing his deposition transcript. The Lilley law firm paid $7,500 on August 21, 2007 for all expenses incurred in 2007.

The panel hearing in the Wilson case occurred on January 12, 2008. The Lilley law firm relied on Dr. Carpenter's deposition testimony as well as other expert testimony available to the Lilley law firm. The Lilley law firm did not ask Dr. Carpenter to perform any additional work until the trial approached in 2009. Between his deposition in April 2007 and July 2009, Dr. Carpenter did not perform any expert services in this matter.

Sometime after his deposition, Dr. Carpenter raised his expert witness fees for all clients to $600 per hour. According to Dr. Carpenter he advised the Lilly law firm, through one of the associates, that his expert fee had increased to $600. According to Mr. Lilley, he did not learn that Dr.

4

Carpenter's fee had increased to $600 per hour until literally the night before trial while he was meeting with Dr. Carpenter. Mr. Lilley did not acquiesce to this increase.

On July 28, 2009, August 5, 2009 and again on September 29, 2009 Mr. Lilley or his firm sent letters to Dr. Carpenter advising him that that the trial had been scheduled. These letters state, "you are our retained expert"; "Your appearance in court is an indispensable part of our trial preparation"; and "We also need to be certain you are up to date on all discovery and that you have all records you need for your court appearance." Dr. Carpenter was the standard of care expert in the Wilson' medical malpractice action in which Mr. Lilley sought more than $11 million dollars. Dr. Carpenter was indeed a necessary witness in this medical malpractice action.

The trial was to commence on December 7, 2009 with Dr. Carpenter as the first witness on Monday, December 14, 2009. The Lilley law firm asked Dr. Carpenter to arrive in Portland by 6:00 p.m. on Sunday, December 13, 2009, and asked him to join Mr. Lilley for dinner in order to prepare for Dr. Carpenter's testimony the next morning. Dr. Carpenter arrived late in the afternoon on Sunday and had dinner with Mr. Lilley. Mr. Lilley brought to the dinner some additional exhibits that he gave to Dr. Carpenter to review. Most of the dinner, which lasted over two hours, revolved around

5

the trial and Dr. Carpenter's testimony. When Dr. Carpenter returned to his hotel room he spent some time reviewing the new records provided to him and other records that he had brought to Maine with him and that related to these new records. The next morning, Mr. Lilley picked him up at approximately 8:30 a.m. and took him back to the Lilley law firm for more preparation.

Because of an objection about the use of the so-called "Greenbook" in the examination of Dr. Carpenter, the court conducted a lengthy voir dire in the morning and Dr. Carpenter did not testify until approximately at 11:30 a.m. Dr. Carpenter left the courtroom at approximately 4:45 p.m. and returned to his home in Warwick, Rhode Island between 8:00 and 9:00 p.m. Dr. Carpenter sent his final bill for 33.5 hours of his time from November 29 through December 14, 2009, for a total of $20,100 at a rate of $600 per hour. It is this final bill that is the subject of this collection lawsuit.

Dr. Carpenter keeps contemporaneous time records and his bills are based on those records. Most of his time records were kept on or near the day the activity was performed, with the exception of the time for December 13 and 14, when the time record was made after he returned home on December 14, 2009.

In this final bill, Dr. Carpenter charged as follows: 1.5 hours for a re-examination of medical records on November 29, 2009; 1.0 hour for discussion with Mr. Flynn and Mr. Lilley on December 2; 3.5 hours for re-examination of medical records and Roper deposition transcript on December 6; 2.0 hours for review of Carpenter deposition transcript and Mr. Flynn's interrogation plan, and correspondence with Mr. Flynn on December 8; 6.5 hours for a review of panel hearing and Hiatt deposition transcripts on December 11; 1.0 hour for review of Aieta and Robbins deposition transcripts on December 13; 7.0 hours for travel and meeting with Mr. Lilley on December 13; and 11.0 hours for preparation for testimony, time in court and travel on December 14, 2009.

## DISCUSSION

Dr. Carpenter asserts he had a contract to serve as an expert witness for Mr. Lilley's client and he fully performed his services and is entitled the $20,100 still due. Dr. Carpenter bears the burden of proof of establishing that there was a contract or, alternatively, establishing the reasonableness of his rates and hours submitted.

The court rejects Mr. Lilley's argument that the terms of the contingent fee agreement between him and the Wilsons limited the defendants' liability to Dr. Carpenter. Although the contingency fee

7

agreement emphasizes that costs, including expert witness fees and expenses, are the responsibility of the clients, the agreement provides that the "amount of the COSTS expended shall be reimbursed to the party who pays them out. The reimbursement for COSTS is done **AFTER** the contingency fee outlined about has been deducted from the GROSS amount received from or on behalf of the opposing party(ies.)" Mr. Lilley testified that his firm "generally tries to get the client to contribute to costs, but if it is a compelling case with catastrophic injuries, like in this case, we finance the case with the hope that we will be reimbursed by the client some day."

Maine law is well-settled that an expert witness is to be paid in accordance with the parties' contract or in the absence of a contract, fair and reasonable fees for the witnesses services as an expert. See *Gordon v. Conley*, 107 Me. 286, 78 A. 365 (1910)(without an agreement as to the compensation the expert witnesses were to receive for their services, they were entitled to reasonable compensation). "Reasonable compensation" means an expert witness brought into court by a party is entitled to be paid to "whatever his services are reasonably worth . . . ." *Id.* at 289-90. In *Gordon v. Conley*, the Court found that the jury were fully warranted in finding an implied promise on the part of the defendant to pay the plaintiff expert witnesses because an expert performs services at the request of a party,

8

which may include remaining in the courtroom to listen to experts on the other side, advise counsel and testify in rebuttal, if necessary, and with a loss of regular occupation for the time that the expert is performing his services for that party. *Id.* The *Conley* court concluded that the jury were fully warranted in finding an implied promise on the part of the defendant to pay plaintiff "whatever their services were reasonably worth, and a sufficient consideration to support it." *Id.* at 291.

The RESTATEMENT (THIRD) OF AGENCY § 6.01, cmt. (d)(1) provides:

> A lawyer who contracts with a third party for goods or services used by lawyers is subject to liability to the third party when the lawyer knows or reasonably should know that the third party relies on the lawyer's credit although the third party knows the identity of the lawyer's client, unless at the time of contracting the lawyer has disclaimed such liability.

In this case, there was no agreement in which Mr. Lilley disclaimed any liability for Dr. Carpenter's services and indeed the Lilley law firm paid all of his bills until 2009. The court also finds that it is usual and customary course of dealing between lawyers and experts for lawyers to take responsibility for paying the expert's fees and this is what Mr. Lilley did in this case, as he had done in other cases.

The court rejects Mr. Lilley's argument that the fair and reasonable rate should be determined by comparing fees paid to other experts in this

9

case. This approach simply doesn't work because of a number of factors, the first of which the parties had an express contract to pay $500 per hour for Dr. Carpenter's expert services. Furthermore, the other experts are not comparables. The pediatric neurologist and the causation expert, Dr. Hiatt, was hired through an agency pursuant to a written contract that establishes $9,000 a day of in court testimony and otherwise a $500 per hour fee and $200 per hour travel fee. Dr. Shanahan, Central Maine Medical Center's expert, has an ongoing relationship with the defense law firm. Dr. Shanahan does not have the expertise and years of service that Dr. Carpenter has. She is not a maternal-fetal medical specialist but rather is a community obstetrician-gynecologist at Central Maine Medical Center.

The express contract for Dr. Carpenter's services set the rate of $500 per hour in 2002 and Mr. Lilley or his law firm agreed to pay and did pay for all services performed and billed from 2002 through 2007 at that rate. The court finds that the parties intended to make mutual promises and to be bound by them. Those promises included Dr. Carpenter serving as an expert witness and the Lilley law firm paying him a $500 per hour fee.

The issues whether the parties agreed to a single hourly rate regardless of the activity and to an increased rate of $600 however are disputed between the parties and there are no circumstances surrounding their

10

transactions in 2009 to corroborate that new terms were established in their agreement. There was no travel before 2009 and no bills paid at the rate of $600. The first and only bill to charge $600 per hour regardless of the activity including travel was the December 2009 final bill. The court finds that although Dr. Carpenter increased all his expert fees to $600 per hour and this is a reasonable rate in light of his experience, knowledge and reputation, neither Daniel Lilley nor his law firm agreed to that new rate or regardless of the activity. Dr. Carpenter bears the burden of establishing that the parties agreed to an increased rate of $600 and to a flat fee for all activity. When the evidence is in equipoise as it is here Dr. Carpenter has not met his burden of establishing that it is more likely than not that the parties agreed to a rate of $600 per hour regardless of the activity. While $600 per hour is a reasonable rate, the parties did not agree to $600 an hour so it is not an express enforceable term of the contract. However, Dr. Carpenter established by a preponderance of the evidence that the hours he billed in his final bill were indeed expended pursuant to the parties original contract and that he should be reimbursed for these services.

The total number of hours reflected in Dr. Carpenter's December 19, 2009 final bill were reasonable, consistent with the understanding of the parties, the course of their dealings, the complexity of the case, the large

11

gaps in time and consistent with customary charges from other experts with his expertise and qualifications. It is also reasonable to expect for critical events, such as depositions and trial, the expert reviews the medical record, other depositions to ensure they are fresh in his mind and that he know the medical record cold so he can find in the record anything he needs to support his testimony.

Dr. Carpenter has established by a preponderance of the evidence that the defendants, in part, breached their contract with him by not paying him for his services described in his December 19, 2009 final bill. There was no showing that Dr. Carpenter's services were unreasonable or unnecessary. A medical malpractice case requires medical expert testimony to establish the standard of care that was breached. This case involved the complex area of catastrophic birth injury, brain injury and cerebral palsy. Dr. Carpenter is a maternal fetal medical specialist in an academic setting and was a most highly qualified expert for this case. Dr. Carpenter was the standard of care expert and without him the case would not have survived a motion to dismiss or a motion for a judgment as a matter of law.

With regard to Dr. Carpenter's charge for travel time, the court finds that there was no agreement concerning payment of travel time. The court concludes that in the absent of an agreement, an expert should be paid a fair

12

and reasonable fee for his travel because the expert is losing income that he would have earned at his institutions back home or with other clients. However absent an agreement about how Dr. Carpenter would be paid for his travel time, the court must establish a fair and reasonable fee. The court finds that it is fair and reasonable for Dr. Carpenter to be paid $200 per hour for his travel time. The revised bill, after adjusting for a $200 hourly rate for travel time of 7 hours, is calculated to be $14,650.

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

A. On Count I of the complaint, Judgment for the plaintiff in the amount of $14,650, together with interest and costs.

B. Counts II and III of the complaint are hereby dismissed.

Dated: June 6, 2012

_____
Joyce A. Wheeler
Justice, Superior Court

13



## STATE OF MAINE
PORTLAND CONSOLIDATED COURTS

205 NEWBURY STREET
PORTLAND, MAINE 04101

**TO:**

```
MARK LAVOIE ESQ
JENNIFER RUSH ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600
```



## STATE OF MAINE
PORTLAND CONSOLIDATED COURTS

205 NEWBURY STREET
PORTLAND, MAINE 04101

**TO:**

```
DANIEL LILLEY ESQ
TINA NADEAU ESQ
DANIEL G LILLEY LAW OFFICE
PO BOX 4803
PORTLAND ME 04112-4803
```