TAX COURT OF NEW JERSEY



Joshua D. Novin
Judge

Washington & Court Streets, 1st Floor
P.O. Box 910
Morristown, New Jersey 07963
Tel: (609) 815-2922 Ext. 54680
Fax: (973) 656-4305

NOT FOR PUBLICATION WITHOUT APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

April 9, 2019

Lawrence S. Berger, Esq.
Berger & Bornstein, LLC
237 South Street
P.O. Box 2049
Morristown, New Jersey 07962

Martin Allen, Esq.
DiFrancesco, Bateman, Kunzman,
 Davis, Lehrer & Flaum, P.C.
15 Mountain Boulevard
Warren, New Jersey 07059

> Re: Washington Shopping Center, Inc. v. Washington Township
> Docket Nos. 005517-2016, 002869-2017, and 006408-2018

Dear Mr. Berger and Mr. Allen:

This letter shall constitute the court's opinion on plaintiff's request to reopen the trial record and compel testimony from defendant's proposed testifying expert as a rebuttal witness.

For the reasons explained more fully below, plaintiff's request to reopen the trial record and compel testimony from defendant's proposed testifying expert is denied.

## I. Procedural History and Factual Findings

Washington Shopping Center, Inc. ("WSCI") is the owner of the real property and improvements located at 459-471 Route 31 South, Washington Township, Warren County, New

Jersey.  The property is identified on Washington Township's municipal tax map as Block 75, Lot 1 (the "subject property").

The real property comprises a 22.84 acre rectangular shaped parcel located at the intersection of Route 31 South and County Road 632.  As of the valuation dates at issue, the real property was improved with an 82,233 square foot retail center.  The subject property also includes a McDonald's fast food restaurant located on a 0.9703 acre pad site, and two additional undeveloped pad sites.

The subject property is located in Washington Township's HC – Highway Commercial District, permitting uses that include appliance stores, bakeries, banks, clothing stores, electronic stores, furniture stores, grocery stores, hardware stores, liquor stores, medical and dental offices, pet stores, pharmacies, restaurants, and theatres.

WSCI timely filed complaints challenging the subject property's 2016, 2017, and 2018 tax year assessments.  Washington Township timely filed a counterclaim for the 2018 tax year.

On April 11, 2018, the court entered a Case Management Order ("CMO").  The CMO notified WSCI and Washington Township that if valuation of the subject property was at issue, and either party intended to rely at trial upon the testimony of a valuation expert, then they shall furnish each other with a trial-ready appraisal report by no later than August 13, 2018.[1]

On or about November 28, 2018, WSCI served on Washington Township, and Washington Township Served on WSCI, the appraisal reports of their proposed testifying experts.  WSCI served an appraisal report dated November 20, 2018, prepared by Gregg

_____

[1]  Pursuant to the parties request, the court subsequently adjourned the date for the exchange of trial-ready appraisal reports twice, first to October 18, 2018, and then to November 28, 2018.

Manzione, MAI ("Mr. Manzione") and Washington Township served an appraisal report dated October 4, 2018, prepared by Darren Raymond, MAI ("Mr. Raymond").[2]

Trial was conducted on January 29, 2019. During trial, WSCI offered testimony from Mr. Manzione, a State of New Jersey certified general real estate appraiser, who was accepted by the court, without objection, as an expert in the field of real property valuation (the "expert"). The expert prepared an appraisal report expressing an opinion of the market value of the subject property as of the October 1, 2015, October 1, 2016, and October 1, 2017 valuation dates.

As of each valuation date, the subject property's tax assessment, implied equalized value, and the expert's value conclusions are set forth below:

| Valuation date | Tax Assessment | Avg. ratio assessed to true value | Implied equalized value | Expert's concluded value |
|---|---|---|---|---|
| 10/1/2015 | $6,438,700 | 94.19% | $6,835,864 | $3,525,000 |
| 10/1/2016 | $6,438,700 | 97.43% | $6,608,539 | $3,525,000 |
| 10/1/2017 | $6,438,700 | 98.35% | $6,546,721 | $3,525,000 |

During trial, WSCI elicited evidence from the expert, who offered both factual and opinion testimony about the subject property. See N.J.R.E. 702. WSCI shepherded the expert through direct examination and following Washington Township's cross-examination, conducted a redirect examination of the expert. Following the expert's testimony, WSCI requested the court move the expert's appraisal report into evidence. After affording the parties an opportunity to be heard, the court moved the expert's report into evidence. WSCI then advised the court that

---

[2] In its transmittal letter to WSCI, Washington Township stated that Mr. Raymond's report is "not intended to be, and should not be considered, adoptive admissions in accordance with Skibinki v. Smith, 206 N.J. Super[.] 349 (App. Div. 1985), and Sallo v. Sabatino, 146 N.J. Super[.] 416 (App. Div. 1976), certif[]. den[ied]., 75 N.J. 24 (1977)[.] . . . Please be advised that [Washington Township] reserve[s] the right not to introduce the report at the time of trial, and the report is being sent to you pursuant to Tax Court Practice, Custom, Procedure and Rules. The report should not be considered as part of evidence until, if and when the Township offers it into evidence." See generally N.J.R.E. 803.

it rested, having presented all its affirmative proofs and evidence supporting a reduction in the subject property's local property tax assessment.

Immediately thereafter, Washington Township moved, under R. 4:37-2(b), for dismissal of WSCI's complaints. Washington Township argued that the expert's opinion was a net opinion, and that WSCI failed to overcome the presumption of validity that attaches to the quantum of the local property tax assessment. After affording Washington Township and WSCI an opportunity to be heard, the court denied Washington Township's motion, placing a statement of reasons on the record.

Washington Township then advised the court that, pursuant to R. 8:3-9, it was withdrawing the counterclaim filed against WSCI for the 2018 tax year. Additionally, Washington Township advised the court that it rested without introducing or offering any proofs or evidence in these matters, including any testimony from Mr. Raymond, relying instead on the validity of the subject property's local property tax assessments.

The court then assigned dates for the submission of post-trial briefs and reply briefs. However, thereafter WSCI raised with the court the prospect of seeking to call or compel Washington Township's proposed testifying expert, Mr. Raymond, as a rebuttal witness. Although no testimony or evidence was offered by Washington Township in defense of the subject property's local property tax assessments, WSCI's counsel sought to solicit or compel rebuttal testimony from Mr. Raymond.[3]

---

[3] WSCI did not argue during trial, and does not argue in its request for relief, that Mr. Raymond's appraisal report constituted an adoptive admission by Washington Township under N.J.R.E. 803(b)(2), and could have been read into the record. See Skibinski, 206 N.J. Super. at 354; see also Sallo, 146 N.J. Super. 418-419; Ratner v. General Motors Corp., 241 N.J. Super. 197, 201 n.2 (App. Div. 1990); Corcoran v. Sears Roebuck and Co., 312 N.J. Super. 117 (App, Div. 1998); Mehalick v. Schwartz, 223 N.J. Super. 259 (Law Div. 1987). However, based on the record, the court concludes that Mr. Raymond's report was not an adoptive admission.

Washington Township objected to WSCI's request, arguing that WSCI did not identify Mr. Raymond as a proposed witness or expert witness and did not subpoena Mr. Raymond seeking to compel his testimony.

After some discussion, the court concluded that Washington Township offered no affirmative or substantive evidence of the subject property's market value, and thus, the court would not permit WSCI to call, or seek to compel testimony from, Mr. Raymond as a rebuttal witness to offer expert opinion testimony on value. The court concluded that the evidentiary record was closed, however, the court afforded WSCI and Washington Township an opportunity to present briefs to the court addressing the issue.

In its brief, WSCI argues that pursuant to the court's CMO, as amended, on or about November 28, 2018 WSCI and Washington Township exchanged trial-ready appraisal reports of their proposed testifying expert witnesses. Additionally, in accordance with the CMO, on January 22, 2019, the parties exchange a list of their proposed witnesses and proposed trial exhibits. Thus, WSCI maintains that given Washington Township's submission to WSCI of a trial-ready appraisal report and identification of its appraiser as a proposed testifying expert witness, WSCI "anticipated . . . that plaintiff would have the opportunity to cross-examine [Washington Township's proposed expert] and elicit testimony as to his expert report."

WSCI charges that Washington Township's proposed testifying expert witness should be permitted or compelled to offer rebuttal expert testimony because during cross-examination of WSCI's expert, Washington Township's counsel "challenged" the expert's opinions of market rent ascribed to the subject property. WSCI maintains that because Washington Township's proposed testifying expert witness offers his own opinions of the subject property's market rent,

his "testimony will be helpful to the court in assessing the weight to be given" the opinions of WSCI's expert.

WSCI further contends that testimony from Washington Township's proposed testifying expert witness "could also be important" if Washington Township elects, on appeal, to challenge the court's findings that WSCI overcame the presumption of validity that attaches to the quantum of the local property tax assessment.

In support of its contention that Washington Township's proposed testifying expert witness should be permitted or compelled to offer rebuttal testimony as an expert witness, WSCI relies on two Connecticut cases, Thomaston v. Ives, 239 A.2d 515 (Conn. 1968)[4], and Loiseau v. Board of Tax Review of Suffield, 699 A.2d 265 (Conn. App. Ct. 1997)[5]. WSCI argues that our

---

[4] Thomaston involved eminent domain proceedings instituted by the Connecticut State Highway Commissioner (the "Commissioner") against the Town of Thomaston. 156 Conn. 166. During trial, Thomaston called as a rebuttal witness, an appraisal expert who had been employed by the Commissioner to estimate the damages arising from the condemnation, but who was not produced by the Commissioner during trial. The Commissioner objected, arguing that the witness' opinions were "privileged 'work product.'" Id. at 516. The Connecticut Supreme Court rejected the Commissioner's arguments concluding that "a landowner may, in eminent domain proceedings, require the state's appraiser to testify concerning his valuation of the land because the inquiry goes only to the appraiser's subjective knowledge." Id. at 518. Notably, the court limited its holding to eminent domain proceedings, cautioning that its conclusion was "not to be taken to mean that every expert witness is to be held to the same requirement. The wide diversity of subjects on which expert opinion may be required and the varying circumstances under which the opinion may be sought militate against any such sweeping generalization." Ibid.

[5] Loiseau involved a real estate tax certiorari matter. 699 A.2d at 266. During trial the taxpayers offered testimony from an expert real estate appraiser. Following the taxpayers' expert's testimony, they sought to call the expert witness for the board of tax review. The board's expert reached a conclusion of value for the taxpayer's property that was "significantly lower than the town's appraised value." Id. at 268. The taxpayer discovered the opinions of the board's expert during the pre-trial discovery exchange of appraisal reports. The board objected arguing that its expert's report constituted work product and that the taxpayers had not identified the board's expert as a witness. The Connecticut Court of Appeals concluded that "'by disclosing the witness, the defendant made it possible for the plaintiffs to discover evidence that the plaintiffs decided was beneficial to their case and should be brought before the trier of fact. To allow the defendant to prevent [the] witness from testifying may [deprive] the trier of fact of

6

State's Supreme Court in <u>Graham v. Gielchinsky</u>, 126 N.J. 361 (1991), and <u>Fitzgerald v. Stanley Roberts, Inc.</u>, 186 N.J. 286 (2006), have "endorse[d] the rulings of the Connecticut court on whether a property owner can compel a government entity's appraisal expert to testify. . . ." Therefore, WSCI maintains that "where the adversary has identified an expert as a possible trial witness and has provided the expert's identity and his opinion . . . , the opposing party has the right to call that expert as a witness at trial."

In response, Washington Township argues that WSCI "completed the presentation of the evidence on all matters," at which time Washington Township moved for involuntary dismissal under <u>R.</u> 4:37-2(b). It maintains that <u>R.</u> 4:37-2(b) requires that such motion be made only after plaintiff "announces to the court that it has completed presentation of the evidence on all matters," which its highlights that WSCI did in these matters. Moreover, once the court denied its motion, Washington Township, pursuant to <u>R.</u> 8:3-9, "withdrew its counterclaim and rested." Washington Township submits that no evidence was introduced by it and thus, WSCI has "nothing to rebut, since [Washington Township] did not put on a case. . . ." Washington Township contends, citing <u>Paterson Redev. Agency v. Bientstock</u>, 123 N.J. Super. 457 (App. Div. 1973), that in local property tax appeal matters the taxpayer bears the burden of proof, conversely, in eminent domain and condemnation proceedings, "there is no burden of proof, the issue being just compensation." Finally, Washington Township argues that regardless of the procedures deficiencies of WSCI's demand, the opinion of an expert may not be compelled

---

material and relevant information that would have assisted it in reaching a decision in the case." <u>Id.</u> at 269 (quoting <u>Lane v. Stewart</u>, 698 A.2d 929, 932 (Conn. App. Ct. 1997)). The court observed that by affording the taxpayers an "opportunity to cross-examine a defense expert does not provide fair access if the defendant chooses not to call the expert as a witness." Significantly, the court observed that "where the defendant in control of the appraiser is a governmental entity, charged with the duty to assess the property of its citizens at fair market value, it is even more compelling to hold that the plaintiffs should have been allowed to call the defendant's expert witness to testify in their case-in-chief." <u>Id.</u> at 269.

against the wishes of that expert, citing Genovese v. New Jersey Transit Rail Operations, Inc., 234 N.J. Super. 375, 380-381 (App. Div. 1989), certif. denied, 118 N.J. 195 (1989); Graham, 126 N.J. 361 (1991); and Fitzgerald, 186 N.J. 286 (2006).  Washington Township maintains that "Mr. Raymond unequivocally refuses to voluntarily testify" on behalf of WSCI, and thus, cannot be compelled to offer expert testimony.

In support of its opposition, Washington Township submits the certification of Mr. Raymond.  Mr. Raymond certifies to the court that he is "not willing to voluntarily appear and offer [expert] testimony on behalf of the plaintiff, Washington Shopping Center, Inc."

## II. Conclusions of Law

### A. Rebuttal testimony

The admission of rebuttal testimony lies within the sound discretion of the trial court. Weiss v. Goldfarb, 295 N.J. Super. 212, 225 (App. Div. 1996), rev'd in part on other grounds, 154 N.J. 468 (1998); Casino Reinvestment Development Authority v. Lustgarten, 332 N.J. Super. 472, 497 (App. Div. 2000); McKernan v. Commonwealth Trust Co., 120 N.J.L. 345, 347-348 (N.J. Sup. Ct. 1938).  However, when the rebuttal testimony sought to be presented will be repetitive or does not challenge or contradict evidence proffered by the defendant, the court may decline to permit its introduction.  "Evidence in rebuttal should not include cumulative evidence or a repetition of that which was put into the record on the main case but is rather that which challenges or contradicts the testimony produced for the defense, which is new matter.  It should meet new facts."  Allison v. Bannon, 128 N.J.L. 161 (E & A 1942).

Here, WCSI argues that it should have been permitted to introduce rebuttal testimony from Washington Township's proposed testifying expert.  Significantly however, Mr. Raymond

8

was unwilling to voluntarily offer expert testimony on behalf of WSCI.[6] Thus, WSCI had no rebuttal witness testimony to offer the court. Accordingly, WSCI's argument that it should have been allowed to introduce rebuttal expert witness testimony is merely speculative and conjectural. It is not the court's function nor duty to engage in conjecture. In re Closing of Jamesburg High School, 83 N.J. 540, 548 (1980).

Moreover, WSCI has not offered any case law or decisional authority demonstrating that a trial court must permit the introduction of rebuttal testimony when the defendant has failed to offer evidence that challenges or contradicts the plaintiff's evidence. Here, Washington Township declined to present any evidence in defense of the subject property's local property tax assessment. Because no evidence was presented by Washington Township that challenged or contradicted the testimony of WSCI's expert, the court may decline to permit the introduction of rebuttal testimony.

Accordingly, for the reasons set forth herein, the court declines to grant WSCI's request to reopen the trial record.

B. Compulsion of Expert Testimony

Our courts have consistently adopted the salutary policy "to allow all competent, relevant evidence to be produced, subject only to a limited number of privileges." Lazorick v. Brown, 195 N.J. Super. 444, 456 (App. Div. 1984). As "'a general proposition, . . . no party to litigation has anything resembling a proprietary right to any witness's evidence . . . . Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone.'" Lazorick v. Brown, 195 N.J. Super. 444, 454 (App. Div. 1984) (citation omitted).

---

[6] The court will later address WSCI's ability to compel expert testimony from Washington Township's proposed testifying expert. See infra Part II.B.

Under our discovery rules a party must disclose the identity of the expert witness that it "expects to call at trial," and provide a copy of such expert's report in interrogatory responses. R. 4:10-2(d)(1). Additionally, the proposed expert witness may be deposed "as to the opinion stated" in his or her report. R. 4:10-2(d)(2). Similarly, in Tax Court proceedings, interrogatories served, pursuant to R. 8:6-1(a)(5), require that the taxpayer or taxing district "[s]tate the name, address and field or area of expertise of each expert [witness] expected to testify. . . ." Our interrogatories further demand "copies of all appraisals and expert reports prepared" on behalf of the municipality or the taxpayer. Moreover, R. 8:6-1(b)(1)(i) demands that "[w]here the valuation of property is an issue: (1) a party intending to rely upon the testimony of any person testifying as a valuation expert must furnish an expert report . . . (i) Thirty (30) days prior to the trial date as designated by the court." R. 8:6-1(b)(1)(i). "In short, our [court] rules afford to a civil litigant broad discovery of the expert witnesses whom an adversary expects to call to testify at trial." Washington v. Perez, 219 N.J. 338, 361 (2014).

However, unfettered access to the identity and opinions of an expert is not absolute. Our courts have emphasized that "New Jersey is in the minority [of jurisdictions] . . . in not allowing the compulsion of expert opinion testimony." Graham, 126 N.J. at 369; see also Genovese, 234 N.J. Super. at 380-381 (concluding that New Jersey's views with respect to the compulsion of expert testimony are "not universally approved"). Accordingly, our courts have distinguished a party's right to the identity and opinions of an expert based on whether such expert is a consulting expert or has been designated as a proposed testifying expert.

When a party has retained an expert in anticipation of litigation or in preparation for trial, but does not expect to call that person as a witness at trial, the adversary can only discover the identity and basis of the expert's opinion only "upon a showing of exceptional circumstances."

R. 4:10-2(d)(3). Moreover, the moving party bears the burden of demonstrating that it is "impractical . . . to obtain facts or opinions on the same subject by other means." R. 4:10-2(d)(3). See Koutsouflakis v. Schirmer, 247 N.J. Super. 139 (Law Div. 1991).

Conversely, when a party has designated an individual in answers to interrogatories or by other means as a proposed expert witness that may or will be produced at trial, an adversary's access to the expert is not so circumscribed. An adversary has the right to discover the expert's report and the substance of the expert's opinions. R. 4:10-2(d)(1). Additionally, the adversary has the right to conduct a deposition of the expert. R. 4:17-7(b)(2). Thus, "[b]y declaring that an expert witness will be produced at trial and providing the expert's identity and opinion to another party, . . . the original proponent has waived his claim that the information is privileged." Fitzgerald, 186 N.J. at 302.

In Genovese, the court concluded that plaintiff's use, during trial, of a videotaped deposition of defendant's examining physician was improper. 234 N.J. Super. at 380-381. In rejecting plaintiff's argument that the videotaped deposition was a *de bene esse* deposition, the court emphasized that plaintiff was not able to produce defendant's examining physician, because his opinions constituted "the opinion of an expert . . . , [and those opinions] may not ordinarily be compelled against the wishes of the expert." Id. at 380; see also Hull v. Plume, 131 N.J.L. 511, 517 (E. & A. 1944); Stanton v. Rushmore, 112 N.J.L. 115 (E. & A. 1934); Braverman v. Braverman, 21 N.J. Super. 367 (Ch. Div. 1952). Significantly, the court emphasized that New Jersey's view with respect to the compulsion of expert testimony "is not universally approved," and observed that other jurisdictions do not share the same philosophy. Genovese, 234 N.J. Super. at 380-381.

In Graham, our Supreme Court reiterated that New Jersey court rules do not permit the discovery of the identity or opinions held by an expert that is not intended to be called at trial as a witness, absent a showing of exceptional circumstances. 126 N.J. at 361. There, the plaintiff instituted a medical malpractice action against defendant. Plaintiff initially consulted with a physician who concluded, in a written report, that defendant's conduct was not negligent. As a result, plaintiff consulted a second physician, who concluded that defendant was negligent. Through undisclosed means, defendant's counsel obtained a copy of the first physician's report and sought to call that physician as an expert witness during trial on defendant's behalf. The trial court permitted the first physician to testify as an expert for defendant. In reversing the trial court, our Supreme Court painstakingly examined the policies and rulings of other jurisdictions, including Thomaston v. Ives, which permitted the compulsion of all expert testimony at trial, concluding that such rulings create an "anomaly that although a party cannot depose an adversary's non-testifying expert, a court can compel the witness to testify at trial." Graham, 126 N.J. at 368. Although the court recognized that compelling reasons exist for disclosure of the identity and opinions of testifying experts, because "advance knowledge . . . of an expert witness's basis for his opinion is essential for effective cross-examination," the court was unwilling to extend such disclosure to non-discoverable expert opinions. Id. at 367. The Court emphasized that "New Jersey is in the minority . . . in not allowing the compulsion of expert opinion testimony." Id. at 369 (emphasis added). Thus, the Court concluded that "[p]ermitting a party to use non-discoverable expert testimony obtained by an adversary does not advance the efficient administration of trials and the fair balance of the parties' interests in the absence of exceptional circumstances." Id. at 371. In sum, the Graham court concluded that absent

"exceptional circumstances, as defined under R[.] 4:10-2(d)(3), courts should not allow the opinion testimony of an expert originally consulted by an adversary." Id. at 373.

In Fitzgerald v. Stanley Roberts, Inc., our Supreme Court examined whether the protections afforded to consulting experts under Graham should be extended to testifying experts. 186 N.J. 286 (2006). In Fitzgerald the plaintiff instituted an action against her former employer under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49, alleging that when she reported an incident of sexual harassment against her boss, she was wrongfully terminated and, as a result, suffered from insomnia, fatigue, and other medical issues. Fitzgerald, 186 N.J. at 293. The defendant sought to elicit testimony during trial from a psychiatrist, who had originally been retained by plaintiff and was identified by plaintiff as a testifying expert. The psychiatrist had modified his initial diagnosis of the plaintiff after having reviewed additional information furnished during discovery. Relying on Graham, the trial court declined to permit defendant to call the psychiatrist and present expert opinion testimony on defendant's behalf. Id. at 297. In reversing the trial court, our Supreme Court concluded that the defendant should have been allowed to call the psychiatrist as an expert witness by the defendants, even after plaintiff notified the defendant that she might not call him. Id. at 302. The Court emphasized that R. 4:10-2(d)(1) "has no applicability to a testifying witness" and that "no party to litigation has anything resembling a proprietary right to any witness' evidence." Id. at 301 (internal quotation omitted). Our Supreme Court further stated that:

> By declaring that an expert witness will be produced at trial and providing the expert's identity and opinion to another party, as required by Rule 4:10-2(d)(1), the original proponent has waived his claim that the information is privileged. Thus, we hold that access to the testifying witness is allowed and the adversary may produce a willing expert at trial.
>
> [Id. at 302 (emphasis added).]

Significantly, in <u>Fitzgerald</u>, our Supreme Court emphasized that the record before it failed to disclose whether the psychiatrist had voluntarily agreed to offer testimony as an expert witness for the defendant. Thus, the Court cautioned that had the psychiatrist "been unwilling to do so, defendants <u>could not have compelled his testimony</u>." <u>Id.</u> at 299, n. 7 (emphasis added) (citations omitted). The Court again highlighted that "New Jersey [is] in minority of jurisdictions not permitting compulsion of expert testimony." <u>Ibid.</u> (citing <u>Graham</u>, 126 N.J. at 369; <u>Genovese</u>, 234 N.J. Super. at 380).

Thus, the principle espoused under <u>Fitzgerald</u> is that a party has no claim of privilege or confidentiality in the identity and opinions of a proposed testifying expert. Moreover, a party's proposed testifying expert may voluntarily agree to testify at trial as an expert witness for an adversary. However, paramount to the offering of such testimony is that the expert has voluntarily agreed to offer his or her testimony, and that such expert testimony not be compelled by subpoena or order of the court.

In <u>Washington v. Perez</u>, our Supreme Court again addressed whether an adversary's proposed testifying expert witness can be compelled to offer expert opinion testimony during trial. 219 N.J. 338 (2014). There, plaintiff was allegedly injured in a motor vehicle accident. Defendant retained two experts and both experts issued reports expressing an opinion regarding plaintiff's injuries. During jury selection defendant represented to prospective jurors that both experts would offer testimony. However, during a pre-trial hearing defendant notified plaintiff that it did not intend to call one of the experts as a witness. Ultimately, defendant elected not to present any expert testimony during trial, instead offering only testimony from a fact witness. During summation, defendant's counsel acknowledged that it had retained experts, but chose not to call them. Conversely, during summation plaintiff's counsel made comments that left the jury

14

to speculate that defendant did not call its experts because their testimony did not support defendant's theory of the case. The trial court issued an adverse inference charge to the jury regarding defendant's expert's failure to offer testimony. Ultimately, the jury returned a verdict in favor of plaintiff, and defendant appealed. The Appellate Division reversed the trial court, concluding that the trial court's adverse inference charge "inflicted 'palpable' harm on defendant[]." Id. at 349. In arguments to the Supreme Court, plaintiff maintained that it "was not in a position to call the defense expert witnesses to testify because the experts could not be compelled to testify and would require compensation to appear at trial [.] . . . [C]onsequently, the expert witnesses were unavailable to testify on her behalf." Id. at 350. In upholding the Appellate Division's reversal of the trial court's ruling, the Court reiterated its holding in Fitzgerald that when a testifying expert witness has been identified, "access to [the] testifying witness is allowed and the adversary may produce a willing expert at trial." Ibid. (emphasis added). Thus, the Court concluded that "if a party decides not to call an expert witness whose identity and report have been disclosed, and who possesses factual information relevant to the case, the principle set forth in Fitzgerald may permit the adversary to call the expert and present the evidence at trial," if either, the witness voluntarily agrees to appear, or has been retained as an expert for the adversary. Id. at 365 (emphasis added).

The court finds that the conclusions reached in Genovese, Graham, Fitzgerald, and Perez can best be explained and aligned as follows: an adversary is not permitted to know the identity and opinions of a consulting expert, and is not permitted to call such consulting expert at trial, absent a showing of "exceptional circumstances" under R. 4:10-2(d)(3). Conversely, no such prohibition applies to individuals designated as proposed testifying experts. An adversary is entitled to know the identity and substance of a proposed testifying expert's opinion, and is

15

similarly entitled to the testifying expert's report. Additionally, an adversary may depose the proposed testifying expert prior to trial. However, a party cannot compel the testimony of an adversary's proposed testifying expert unless the expert has consented to offering such expert opinion testimony. In sum, an adversary's proposed testifying expert's opinion may not be compelled against the expert's wishes.

Based on the record presented, the court is satisfied that Washington Township timely identified and served the appraisal report of Mr. Raymond, its proposed testifying expert witness, on WSCI. Thus, any alleged privilege, or confidentiality that Washington Township may have possessed in Mr. Raymond's opinions were lost when it identified him as their proposed testifying expert. Therefore, to the extent that any of the arguments offered by Washington Township either during trial or in its submissions to the court raise some proprietary or confidentially protected rights in and to Mr. Raymond's opinions, those rights were waived when Washington Township identified him as its proposed testifying expert.

In this case, as in Fitzgerald and Perez, and unlike Graham, defendant, Washington Township, provided WSCI the identity of Mr. Raymond, its proposed testifying expert and the appraisal report that he prepared. Thus, if WSCI had questions with respect to Mr. Raymond's observations, conclusions, or opinions WSCI had an opportunity, prior to trial, to depose Mr. Raymond. However, the record does not disclose that WSCI ever made a demand to take his deposition. Moreover, in accordance with the court's CMO, by letter dated January 17, 2019 Washington Township notified the court and WSCI that "defendant reserves the right to call the following appraisal expert as a witness at [] trial: Darren Raymond, MAI, SCGREA." However, unlike the facts in Fitzgerald, and more closely aligned with the facts in Perez, here the record does not disclose that WSCI made any effort to engage Mr. Raymond prior to trial to either

16

voluntarily, or for compensation, elicit his expert testimony during trial. Instead, after WSCI announced to the court that it rested, and after Washington Township rested without offering any evidence, WSCI sought to compel Mr. Raymond's involuntary expert testimony before this court as a rebuttal witness.

The court finds that the Connecticut authority cited to and principally relied on by WSCI, Thomaston and Loiseau, conflict with, and are inapposite to, New Jersey law regarding the compulsion of testimony by proposed testifying experts. Our Supreme Court has consistently observed that New Jersey is in the minority of jurisdictions in not allowing the compulsion of expert testimony. See Graham, 126 N.J. at 369; Fitzgerald, 186 N.J. at 299, n. 7; Perez, 219 N.J. at 350. In Graham and Fitzgerald, our Supreme Court engaged in an exhaustive examination, analysis and discussion of the views adopted by other jurisdictions, and why it favored the approach that has been adopted in New Jersey. The Court observed that an approach focused on the "expert's substantive opinion, not his retention . . . tends to unfairly prejudice the party who first hired the expert; and that jurors may give too much credence to the opinion of the Red Rover expert." Fitzgerald, 186 N.J. at 303. Conversely, the Court found that allowing testimony regarding an expert's prior engagement by an adverse party may similarly impose an "unfair prejudice . . . on an adverse party . . . there are many reasons why a witness, hired as a party's expert, may change his or her original view of the case." Id. at 304. Ultimately, our Supreme Court decided that the approach adopted in New Jersey, precluding disclosure of the identity and opinions of a consulting expert, absent a showing of exceptional circumstances; requiring disclosure of the identity and opinions of a proposed testifying expert; and prohibiting the compulsion of expert testimony against the expert's wishes, were in the best interests of New

Jersey.[7]  Thus, the court rejects WSCI's plea for this court to adopt the approach followed in Connecticut, as that approach has been considered and expressly rejected by our State's Supreme Court.  See Graham, 126 N.J. at 368-369; Fitzgerald, 186 N.J. at 299, n. 7.

In sum, WSCI cannot compel the expert testimony of Mr. Raymond, Washington Township's proposed testifying expert, against Mr. Raymond's wishes, or without his consent. Here, the record before the court discloses that Mr. Raymond does not consent to willingly offer expert testimony on WSCI's behalf in these matters.

For the above-stated reasons, the court denies WSCI's request to reopen the trial record, and to compel the testimony of Washington Township's proposed testifying expert as a rebuttal witness.

Accordingly, the court will schedule a conference call with counsel for WSCI and counsel for Washington Township to fix dates for submission of post-trial briefs in these matters.

Very truly yours,


Hon. Joshua D. Novin, J.T.C.

---

[7] But see Stigliano by Stigliano v. Connaught Lab., Inc., 140 N.J. 305, 313-314 (1995), permitting testimony from treating physicians who examine patients not "in anticipation of litigation or in preparation for trial, but for the purpose of treatment . . . Although the treating doctors are doubtless 'experts,' . . . they are more accurately fact witnesses."